**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOSE L. GARCIA**, | |
| Plaintiff, | Case No.: 23CV22903 |
| -against- | **COMPLAINT** |
| **CITY OF PERTH AMBOY, SERGEANT PANAGIOTI BOULIERIS; PTL. ANTHONY GARCIA;** | |
| Defendants. | |

PLEASE TAKE NOTICE that Plaintiff Jose L. Garcia, by his attorneys, Glenn A. Garber, PC, complaining of the Defendants, hereby alleges as follows:

**NATURE OF THE CASE**

1. This is an action to recover damages for the violations of Jose Garcia's rights under the common laws of the State of New Jersey for violations of the New Jersey Civil Rights Act and common law negligence; and pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

2. Despite his innocence, Jose Garcia ("Garcia" or "Plaintiff") was wrongfully convicted and served over three years in prison for second-degree possession of a weapon for an unlawful purpose; second-degree endangering the welfare of a child; third-degree terroristic threats; fourth-degree aggravated assault; and, simple assault, a disorderly persons offense.

3. The wrongful conviction and ensuing damages were caused by the intentional and malicious conduct of Defendants Sergeant Panagioti Boulieris and Ptl. Anthony Garcia, police

officers within the Perth Amboy Police Department responsible for the arrest and the initiation of criminal proceedings against Garcia, and the City of Perth Amboy.

4. Liability against the Defendant City of Perth Amboy is invoked under the doctrine of *respondeat superior* for the misconduct of Individual Defendants Boulieris and Garcia.

## JURISDICTION AND VENUE

5. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (4) and the aforementioned statutory and constitutional provisions.

6. Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over any and all New Jersey state law claims and causes of action which derive from the same nucleus of operative faces and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

7. Venue is lodged in the United States District Court for the State of New Jersey pursuant to 28 U.S.C. §§ 1391(a)-(c) and 1402(b), where Plaintiff resides and where substantial parts of the events or omissions giving rise to the claim occurred.

## JURY DEMAND

8. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## THE PARTIES

9. Plaintiff was wrongfully prosecuted, indicted, tried, convicted, and imprisoned by the unlawful and illegal actions of Defendants Sergeant Panagioti Boulieris and Ptl. Anthony Garcia, police officers within the Perth Amboy Police Department responsible for the arrest and the initiation of criminal proceedings against Garcia, and the City of Perth Amboy.

10. The Perth Amboy Police Department ("PAPD") is and was at all times relevant herein an agency of the Defendant City of Perth Amboy and the Defendant City of Perth Amboy was a policymaker for this agency.

11. At all times relevant to this action, Defendant City of Perth Amboy, by its agents, servants, and employees was responsible for the operation, maintenance, and control of PAPD and the selection, training, supervision, and disciplining of police officers.

12. Defendants Boulieris and Garcia are and were at all relevant times herein duly appointed agents, employees, officers, and servants of the PAPD.

13. Defendants Boulieris and Garcia are collectively referred to as the "Individual Defendants."

14. Defendants Boulieris and Garcia are being sued in their individual capacities.

15. At all relevant times, Defendants Boulieris and Garcia acted towards Plaintiff under color of the statutes, ordinances, customs, and usage of the State and City of Perth Amboy, and on behalf of and within the scope of their employment, duties and functions as agents, employees, officers, and servants of PAPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions and duties.

16. The City of Perth Amboy is liable for the conduct of the Individual Defendants and any damages they caused under the doctrine of *respondeat superior*.

17. Defendants Boulieris and Garcia are entitled to indemnification under New Jersey law and by contract.

**STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION**

**Procedural History**

18. On March 3, 2017, Plaintiff Garcia was wrongfully convicted of second-degree possession of a weapon for an unlawful purpose (N.J.S.A. 2C:39-4(a)), second-degree endangering

the welfare of a child (N.J.S.A. 2C:24-4(a)), third-degree terroristic threats (N.J.S.A. 2C:12-3(a)), fourth-degree aggravated assault (N.J.S.A. 2C:12-1(b)(4)), and simple assault, a disorderly persons offense (N.J.S.A. 2C:12-1(a)(3)).

19. The judgment of conviction was rendered after a jury trial under indictment number 14-09-01098I in the Law Division (Criminal) of the Superior Court of New Jersey, Middlesex County.

20. On December 11, 2017, Plaintiff was sentenced to an aggregate term of five years' imprisonment with a three-and-one-half year period of parole ineligibility.

21. On July 30, 2021, the Appellate Division of the Superior Court of New Jersey reversed the judgment of conviction and remanded the for a new trial.

22. On or about December 6, 2021, the Law Division (Criminal) of the Superior Court of New Jersey, Middlesex County granted the Middlesex County Prosecutor's Office's motion for dismissal of the indictment and the criminal proceeding terminated in his favor.

**Mr. Garcia's Arrest**

23. On the morning of June 7, 2014, Mr. Garcia was at home with his wife, Diana, and his two sons, Jose[1] and Aiden. Jose came downstairs just as Mr. Garcia and his wife were finishing up a conversation, and they invited him to have a seat so they could discuss a letter they had received from Jose's school regarding his bad behavior.

24. Jose, who was fifteen years old, had only been living with them since December 2013, when he had asked to move in with his father. He and his mother, Marilyn Sanchez, were constantly arguing, as Jose was always lying and doing poorly in school, and Ms. Sanchez was having trouble disciplining him.

---

[1] As Plaintiff Jose L. Garcia and his son, Jose C. Garcia, share the same name, the Complaint will refer to Plaintiff's son as "Jose."

25. Once Jose took a seat, Mr. Garcia proceeded to reprimand him about the contents of the letter and told Jose he would be spending his summer weekdays in a program called "Adelante" and working part-time on the weekends. Mr. Garcia wanted to help his son get on the right track and believed that keeping him busy during the summer and giving him structure would do that. Jose, however, who immediately objected to his father, had other plans.

26. In the early morning on June 8, 2014, nearly twenty-four hours later, the Perth Amboy Police Department knocked on Mr. Garcia's door and indicated that there was a warrant for his arrest. Mr. Garcia, who had never been in trouble with the law, was in shock. He consented to their search of his home and was immediately arrested.

27. Mr. Garcia soon learned that Jose had told the police that he had threatened the entire family with a gun. Mr. Garcia, who was employed by FJC Security Services as an armed security guard at various federal facilities, was licensed to carry firearms and had several secured in his home, and he had never threatened anyone with any of them.

28. No reasonable police officer would have ever believed Jose's outlandish accusations. Jose had a pattern of misconduct at school and was blatantly making false accusations that would allow him to move back in with his mother, who essentially let him do whatever he wanted.

29. Furthermore, there was no history of any domestic abuse in the family. Jose was not a reliable witness, and this fact was obvious to his own mother, who referred to her own son as a compulsive liar. The Individual Defendants should never have uncritically relied on his statements, as a basis for arrest or prosecution.

### Mr. Garcia's Malicious Prosecution, Trial, and Sentencing

30. After several days of jury selection, on February 28, 2017, the trial against Mr. Garcia commenced before Superior Court Judge Joseph L. Rea.

31. Jose was the first witness to testify on behalf of the State. He basically relayed the same story he had told the police almost three years earlier, namely, that on the morning of June 7, 2014, he was awakened by a domestic dispute between his father, Mr. Garcia, and his stepmother, Diane. At some point that morning, Jose claims he heard Diana calling his name in a "worried voice" and that when he went downstairs in response, he saw his father with one hand balled into a first and the other grabbing one of Diana's wrists.

32. Jose further testified that at this point, he got in between them and attempted to restrain his father. Mr. Garcia then allegedly went upstairs and into his bedroom closet to get his .38 caliber revolver, with Jose following. Jose testified that he follows his father back downstairs but sits on the steps while his father goes back to Diana and hears her say "get the gun out of my face." Mr. Garcia then allegedly comes back by the stairs where Jose is sitting and points the gun at him.

33. Afterwards, Jose's aunt came to pick him up and he went to his little brother Aiden's birthday party. After the party, he goes home with Mr. Garcia, Diana, and Aiden. It is not until approximately 2:00 a.m. the next morning that he goes to PAPD with his mother to make a statement about his father's threats.

34. Jose admits that in 2014 he was a "rebellious teenager;" and his mother told Mr. Garcia their son was a compulsive liar. When his mother Ms. Sanchez testified on behalf of the State, she admitted that she did not believe a word that came out of her son's mouth during this time. Discounting Jose's claims at the time, she did not call 911 when her son called her to report that Mr. Garcia had pointed a gun at him.

35. Sergeant Panagioti Boulieris also testified on behalf of the State. He testified that in the early morning hours of June 8, 2014, Jose and his mother, Ms. Sanchez, came by the station to make a statement. Sergeant Boulieris admitted to conducting an informal one-on-one interview

with Jose before audio/video recording a formal interview. On cross-examination, Sergeant Boulieris admitted that from the beginning of the investigation, his focus was on retrieving a statement from Jose and that he did not interview anyone else regarding the allegations against Garcia. Furthermore, he did not investigate the inconsistencies in Jose's statement or look into Jose's reputation for making false statements. Sergeant Boulieris also did not question Ms. Sanchez about why 911 was called or why she let her son return to Garcia's home after having been purportedly threatened at gunpoint.

36. Ptl. Anthony Garcia was the final witness from PAPD to testify for the State. Ptl. Garcia was responsible for preparing the criminal complaints and went to Mr. Garcia's home on the morning of June 8, 2014 to arrest him and to conduct a search for the weapons. Ptl. Garcia admitted that had he found loaded weapons or had seen anyone in the home with injuries, he would have indicated as such in his report. Despite the clear evidence that Jose was unreliable witness, his lies were the sole basis for the prosecution against Mr. Garcia.

37. Despite all this, Garcia was convicted of second-degree possession of a weapon for an unlawful purpose (N.J.S.A. 2C:39-4(a)), second-degree endangering the welfare of a child (N.J.S.A. 2C:24-4(a)), third-degree terroristic threats (N.J.S.A. 2C:12-3(a)), fourth-degree aggravated assault (N.J.S.A. 2C:12-1(b)(4)), and simple assault, a disorderly persons offense (N.J.S.A. 2C:12-1(a)(3)). He was sentenced to an aggregate term of five years' imprisonment with a three-and-one-half year period of parole ineligibility.

**Appeal and Exoneration**

38. After Garcia's December 22, 2017 judgment of conviction, his defense attorney filed an appeal, which was argued on January 25, 2021.

39. On July 30, 2021, the Superior Court of New Jersey, Appellate Division, reversed the judgment of conviction and remanded the case for a new trial. The Appellate Division determined

that trial court erred in admitting Jose's prior consistent statement to bolster his credibility, and that the admission of the prior statement constituted prejudicial error.

40. On or about December 6, 2021, the Law Division (Criminal) of the Superior Court of New Jersey, Middlesex County granted the Middlesex County Prosecutor's Office's motion for dismissal of the indictment and the criminal proceeding terminated in his favor.

41. Over the four years since his son's initial false statement, Mr. Garcia was finally exonerated of a conviction for a crime he did not commit.

**Damages**

42. From 2017 to 2021, Garcia was confined in the custody of the State of New Jersey. During this period, he suffered greatly as a victim of unjust conviction and incarceration.

43. The injuries and damages sustained by Garcia arising from his unjust conviction and imprisonment include, but are not limited to: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of family; loss of companionship; loss of love; loss of income; infliction of physical and mental illness; humiliation; indignities; embarrassment; degradation; injury to reputation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom, including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, travel, enjoyment, and expression.

44. As a direct result of Garcia's unjust conviction and imprisonment, many of the effects of these disabilities continue to plague him to this day and will continue to plague him for the rest of his life.

**FIRST CLAIM FOR RELIEF:**
**PROSECUTION WITHOUT PROBABLE CAUSE UNDER 42 U.S.C. § 1983**
**AGAINST THE INDIVIDUAL DEFENDANTS**

45. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

46. The Individual Defendants initiated a prosecution against Plaintiff without probable cause and that prosecution resolved in a complete dismissal of the charges, in favor of Plaintiff.

47. The grand jury indictment is a nullity because it was procured using false evidence and statements and by withholding exculpatory evidence and statements.

48. That by virtue of the aforementioned acts by the Individual Defendants, Plaintiff was deprived of civil rights guaranteed under the Fourth Amendment to the United States Constitution to be free from unreasonable or unlawful searches and seizures, and the Individual Defendants are therefore liable to Plaintiff for damages under 42 U.S.C. § 1983.

49. As a result of the above unconstitutional conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

50. As a result of the above unconstitutional conduct, the Individual Defendants are liable for punitive damages.

**SECOND CLAIM FOR RELIEF:**
**DUE PROCESS VIOLATIONS UNDER 42 U.S.C. § 1983 AGAINST**
**THE INDIVIDUAL DEFENDANTS**

51. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

52. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

53. The Individual Defendants provided false evidence and statements to the prosecution, defense counsel, and court, including statements from an unreliable witness, Plaintiff's teenage son, about the alleged assault and threat with a deadly weapon.

54. That by virtue of the aforementioned acts by the Individual Defendants, Plaintiff was deprived of due process and trial rights guaranteed under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution to be free from prosecution based on false statements and under *Brady v. Maryland*, 373 U.S. 83 (1963), and the Individual Defendants are therefore liable to Plaintiff for damages under 42 U.S.C. § 1983.

55. As a result of the above unconstitutional conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

### THIRD CLAIM FOR RELIEF:
### COMMON LAW MALICIOUS PROSECUTION
### AGAINST DEFENDANTS

56. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

57. The Individual Defendants initiated a prosecution against Plaintiff without probable cause, and with malice, and that prosecution resolved in a complete dismissal of the charges, in favor of Plaintiff.

58. Any presumption of probable cause conferred by the grand jury indictment is rebutted because the indictment was procured through false evidence and statements.

59. As a result of the above tortious conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

60. As a result of the above unconstitutional conduct, the Individual Defendants are liable for punitive damages.

61. The City of Perth Amboy is liable for the conduct of the Individual Defendants and any damages they caused under the doctrine of *respondeat superior*.

### FOURTH CLAIM FOR RELIEF:
### COMMON LAW NEGLIGENCE
### AGAINST DEFENDANTS

62. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

63. The Individual Defendants negligently performed their jobs and Garcia was harmed as a result.

64. The Defendant City was also negligent in failing to train and supervise the Individual Defendants, allowing them to provide inaccurate evidence from an unreliable witness that caused Garcia's wrongful conviction.

65. The Defendants owed a duty of care to Garcia.

66. The Defendants breached their duty.

67. The Defendants' negligence was the proximate cause of Garcia's wrongful conviction and caused him to suffer the injuries and damages described above.

### FIFTH CLAIM FOR RELIEF:
### NEW JERSEY CIVIL RIGHTS ACT
### AGAINST INDIVIDUAL DEFENDANTS

68. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

69. The Individual Defendants are liable to Plaintiff under New Jersey's Civil Rights Act, N.J.S.A. 10:6-2 et seq., because they deprived Plaintiff of due process or equal protection rights, privileges or immunities secured to him by the Constitution or laws of the United States as well as substantive rights, privileges or immunities secured by the Constitution or laws of the

State of New Jersey, specifically when the Individual Defendants provided false evidence and statements to the prosecution, defense counsel, and court, including statements from an unreliable witness, Plaintiff's teenage son, about the alleged assault and threat with a deadly weapon.

70. As a direct and proximate result, the fabricated and false inculpatory evidence violated Garcia's clearly established constitutional rights including the right to not be unlawfully seized, the right to due process, and the right to a fair prosecution, fair pretrial process, and fair trial, and caused him to be wrongfully prosecuted and convicted and to suffer the injuries and damages described above.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all Defendants:

    a. Compensatory damages;

    b. Punitive damages;

    c. The convening and empaneling of a jury to consider the merits of the claims herein;

    d. Costs and interest and attorney's fees; and,

    e. Such other and further relief as this court may deem appropriate and equitable.

Dated: New York, New York
December 5, 2023

**Glenn A. Garber, P.C.**

By:

Glenn A. Garber

233 Broadway, Suite 2370
New York, New York 10279
Phone: (212) 965-9370
Fax: (212) 965-9375
*Attorneys for Plaintiff*

13