JOSE L. GARCIA,

    Plaintiff,

      v.

CITY OF PERTH AMBOY, SERGEANT PANAGIOTI BOULIERIS, PTL. ANTHONY GARCIA,

    Defendants.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

Hon. Brian R. Martinotti, U.S.D.J.
Hon. Michael A. Hammer, U.S.M.J.

Civil Action No. 23-22903 (BRM/MAH)

Motion Date: April 1, 2024

**(Electronically Filed)**

---

**BRIEF IN SUPPORT OF MOTION FOR TO DISMISS THE COMPLAINT ON BEHALF OF DEFENDANTS, CITY OF PERTH AMBOY, SERGEANT PANAGIOTI BOULIERIS, AND PTL. ANTHONY GARCIA**

---

**CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP**
50 Tice Boulevard, Suite 250
Woodcliff Lake, New Jersey 07677
(201) 474-7100
dsanchez@cmlawfirm.com
mmoran@cmlawfirm.com
Attorneys for Defendants, City of Perth Amboy, Sergeant Panagioti Boulieris, and Ptl. Anthony Garcia

Douglas V. Sanchez, Esq.
    Of Counsel

Michael T. Moran, Esq.
    On the Brief

## **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS...........................................................................................i

TABLE OF AUTHORITIES ....................................................................................ii

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS ........................................................................................4

      A.     Plaintiff's Arrest...........................................................................4

      B.     The Indictment, Prosecution, and Trial......................................5

      C.     The Appellate Remand and Dismissal.....................................11

PROCEDURAL HISTORY......................................................................................12

STANDARD OF REVIEW .....................................................................................14

ARGUMENT ..........................................................................................................15

POINT I

      SERGEANT BOULIERIS AND PATROLMAN GARCIA ARE
      ENTITLED TO QUALIFIED IMMUNITY AND DISMISSAL OF
      COUNTS ONE, TWO, AND FIVE OF THE COMPLAINT ..............................15

      A.     Statutory or Constitutional Right.................................................17

      B.     Clearly Established Statutory or Constitutional Right................22

POINT II

      IN THE ALTERNATIVE, PLAINTIFF'S 42 U.S.C. § 1983 AND
      NJCRA CLAIMS UNDER THE FIFTH AND FOURTEENTH
      AMENDMENTS ARE FORECLOSED BY THE "MORE-
      SPECIFIC-PROVISION" RULE.........................................................24

POINT III

      N.J. STAT. ANN. § 59:2-10 IMMUNIZES THE CITY WITH
      RESPECT TO PLAINTIFF'S MALICIOUS PROSECUTION
      CLAIM IN COUNT THREE OF THE COMPLAINT .........................................26

POINT IV

    PLAINTIFF'S MALICIOUS PROSECUTION CLAIM AGAINST SERGEANT BOULIERIS AND PATROLMAN GARCIA IN COUNT THREE OF THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ......................................28

POINT V

    N.J. STAT. ANN. § 59:3-3 IMMUNIZES DEFENDANTS WITH RESPECT TO PLAINTIFF'S NEGLIGENCE CLAIM ......................................29

CONCLUSION.................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                            <u>Page</u>

<u>Abuomar v. Dep't of Corr.</u>,
  754 F. App'x 102 (3d Cir. 2018) ................................................................26

<u>Alston v. City of Camden</u>,
  773 A.2d 693 (N.J. 2001)...........................................................................30

<u>Anderson v. Creighton</u>,
  483 U.S. 635 (1987)...................................................................................16

<u>Ashcroft v. al-Kidd</u>,
  563 U.S. 731 (2011)..............................................................................15, 16

<u>Ashcroft v. Iqbal</u>,
  556 U.S. 662 (2009)...................................................................................14

<u>Aversano v. Palisades Interstate Parkway Comm'n</u>,
  832 A.2d 914 (N.J. Super. Ct. App. Div. 2003), <u>aff'd in part and modified in part</u>, 851 A.2d 633 (N.J. 2004) ................................................................................27

<u>Betts v. New Castle Youth Dev. Ctr.</u>,
  621 F.2d 249 (3d Cir. 2010).......................................................................25

<u>Bell Atl. Corp. v. Twombly</u>,
  550 U.S. 544 (2007)...................................................................................14

<u>Bernstein v. State</u>,
  986 A.2d 22 (N.J. Super. Ct. App. Div. 2010)..........................................27

Brinegar v. United States,
   338 U.S. 160 (1949) ...........................................................................................17

Brower v. Cnty. of Inyo,
   489 U.S. 593 (1989) ...........................................................................................25

Camreta v. Greene,
   563 U.S. 692 (2011) .......................................................................................... 16

Canico v. Hurtado,
   676 A.2d 1083 (N.J. 1996) .................................................................................30

City & Cnty. of San Francisco v. Sheehan,
   575 U.S. 600 (2015) .......................................................................................... 16

City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.,
   908 F.3d 872 (3d Cir. 2018) ..........................................................................14, 15

Cnty. of Sacramento v. Lewis,
   523 U.S. 833 (1998) ...........................................................................................26

Coyne v. State, Dep't of Transp.,
   867 A.2d 1159 (N.J. 2005) .................................................................................26

Cruz v. Camden Cnty. Police Dep't,
   245 A.3d 254 (N.J. Super. Ct. App. Div.), certif. denied, 254 A.3d 1180 (N.J. 2021) ..............15

Dempsey v. Bucknell Univ.,
   834 F.3d 457 (3d Cir. 2016) ...............................................................................18

District of Columbia v. Wesby,
   583 U.S. 48 (2018) .............................................................................................17

Dunlea v. Twp. of Belleville,
   793 A.2d 888 (N.J. Super. Ct. App. Div. 2002) .................................................29, 30

Earl v. Winne,
   101 A.2d 535 (N.J. 1953) ...................................................................................28

Evancho v. Fisher,
   423 F.3d 347 (3d Cir. 2005) ...............................................................................29

Feinberg v. N.J. Dep't of Envtl. Prot.,
   644 A.2d 593 (N.J. 1994) ...................................................................................26

Fleuhr v. City of Cape May,
  732 A.2d 1035 (N.J. 1999).......................................................................................27

Fowler v. UPMC Shadyside,
  578 F.3d 203 (3d Cir. 2009).....................................................................................15

Fuchs v. Mercer Cnty.,
  260 F. App'x 472 (3d Cir. 2008) ..............................................................................23

Garry v. Payne,
  541 A.2d 293 (N.J. Super. Ct. App. Div. 1988).......................................................27

Graham v. Connor,
  490 U.S. 386 (1989)..................................................................................................24

Harz v. Borough of Spring Lake,
  191 A.3d 547 (N.J. 2018)..........................................................................................15

Hoag v. Brown,
  935 A.2d 1218 (N.J. Super. Ct. App. Div. 2007)......................................................27

Hunter v. Bryant,
  502 U.S. 224 (1991) .................................................................................................. 22

In re Burlington Coat Factory Sec. Litig.,
  114 F.3d 1410 (3d Cir. 1997).................................................................................... 14

Kedra v. Schroeter,
  876 F.3d 424 (3d Cir. 2017)......................................................................................17

Lascurain v. City of Newark,
  793 A.2d 731 (N.J. Super. Ct. App. Div. 2002)........................................................30

Lawson v. City of Coatesville,
  42 F. Supp. 3d 664 (E.D. Pa. 2014) ......................................................................... 25

Lewis v. City of Philadelphia,
  No. 19-2847, 2020 WL 1683451 (E.D. Pa. Apr. 6, 2020)........................................23

Liburdi v. Twp. of Toms River,
  No. A-1362-11, 2012 WL 2360120 (N.J. Super. Ct. App. Div. June 22, 2012) .......................30

Lind v. Schmid,
  337 A.2d 365 (N.J. 1975)....................................................................................27, 28

iv

LoBiondo v. Schwartz,
  970 A.2d 1007 (N.J. 2009)................................................................................28

Malleus v. George,
  641 F.3d 560 (3d Cir. 2009)........................................................................14, 15

Mammaro v. N.J. Div. of Child Prot. & Permanency,
  814 F.3d 164 (3d Cir. 2016)....................................................................... 16, 24

McCall v. City of Philadelphia,
  396 F. Supp. 3d 549 (E.D. Pa. 2019) ........................................................... 25

McTernan v. City of York,
  577 F.3d 521 (3d Cir. 2009)...........................................................................14

Michaels v. New Jersey,
  222 F.3d 118 (3d Cir. 2000)...........................................................................23

Mitchell v. Forsyth,
  472 U.S. 511 (1985)........................................................................................16

Mullenix v. Luna,
  577 U.S. 7 (2015) .......................................................................................... 16

Nemeth v. Off. of Clerk of Superior Court of N.J.,
  837 F. App'x 924 (3d Cir. 2020) ...................................................................25

Nguyen v. U.S. Catholic Conference,
  719 F.2d 52 (3d Cir. 1983)..............................................................................25

Orsatti v. N.J. State Police,
  71 F.3d 480 (3d Cir. 1995)........................................................................16, 18

Palmisano v. Pear,
  703 A.2d 966 (N.J. Super. Ct. App. Div. 1997)........................................... 11

Pearson v. Callahan,
  555 U.S. 223 (2009) .................................................................................. 15, 16

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,
  998 F.2d 1192 (3d Cir. 1993)..........................................................................14

Phillips v. Cnty. of Allegheny,
  515 F.3d 224 (3d Cir. 2008)..............................................................................4

Porter v. Pa. Dep't of Corr.,
  974 F.3d 431 (3d Cir. 2020)..................................................................................25

Rose v. Bartle,
  871 F.2d 331 (3d Cir. 1989)..................................................................................18

Schneider v. Simonini,
  749 A.2d 336 (N.J. 2000)......................................................................................18

Schneyder v. Smith,
  653 F.3d 313 (3d Cir. 2011)..................................................................................25

Smith v. Reddy,
  882 F. Supp. 497 (D. Md. 1995)...........................................................................23

State v. Cook,
  750 A.2d 91 (N.J. Super. Ct. App. Div. 2000)..................................................... 21

State v. Hogan,
  676 A.2d 533 (N.J. 1996)......................................................................................19

State v. J.L.G.,
  No. A-3631-17, 2021 WL 3234769 (N.J. Super. Ct. App. Div. July 30, 2021) ................. passim

State v. Jones,
  231 A.3d 549 (N.J. 2020)......................................................................................18

State v. Rivera,
  99 A.3d 847 (N.J. Super. Ct. App. Div. 2014).....................................................23

State v. Sullivan,
  777 A.2d 60 (N.J. 2001).........................................................................................21

State v. Waltz,
  293 A.2d 167 (N.J. 1972)...................................................................................... 18

Tomer v. Gates,
  811 F.2d 1240 (9th Cir. 1987) ..............................................................................23

United States v. Patel,
  No. 20-613, 2023 WL 363052 (D.N.J. Jan. 23, 2023)......................................... 22

Wharton v. Danberg,
  854 F.3d 234 (3d Cir. 2017)................................................................................. 24

<u>Williams v. Sec'y Pa. Dep't of Corr.</u>,
    848 F.3d 549 (3d Cir. 2017) ............................................................................ 17

**<u>Constitutional Provisions</u>**

U.S. Const. amend. IV .......................................................................................... 25

**<u>Statutes</u>**

42 U.S.C. § 1983 .......................................................................................... <u>passim</u>

N.J. Stat. Ann. § 2C:12-1a(3) ...................................................................... 10, 20

N.J. Stat. Ann. § 2C:12-1b(4) .................................................................. 5, 10, 20

N.J. Stat. Ann. § 2C:12-3a ....................................................................... 5, 10, 21

N.J. Stat. Ann. § 2C:24-4a(2) ............................................................. 5, 10, 20, 21

N.J. Stat. Ann. § 2C:39-4a ....................................................................... 6, 10, 21

N.J. Stat. Ann. § 10:6-1 ...................................................................................... 1

N.J. Stat. Ann. § 52:4C-1 .................................................................................. 12

N.J. Stat. Ann. § 59:1-1 ................................................................................. 2, 26

N.J. Stat. Ann. § 59:2-2b ................................................................................... 30

N.J. Stat. Ann. § 59:2-10 .......................................................................... 2, 27, 28

N.J. Stat. Ann. § 59:3-3 ............................................................................. 3, 29, 30

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 14

N.J. R. Evid. 803(a)(2) ...................................................................................... 11

## PRELIMINARY STATEMENT

Plaintiff, Jose L. Garcia ("Plaintiff"), is a state court criminal defendant turned federal court civil plaintiff because of a December 2021 dismissal of charges in Middlesex County Superior Court following a July 2021 appellate reversal and remand of his March 2017 conviction on four indictable offenses and one disorderly persons offense. In the Complaint, Plaintiff seeks redress for alleged violations of his federal and state common law, statutory, and constitutional rights. However, as will be demonstrated more fully herein, Defendants, City of Perth Amboy (the "City"), Perth Amboy Police Department Sergeant Panagioti Boulieris ("Sergeant Boulieris"), and Perth Amboy Police Department Patrolman Anthony Garcia ("Patrolman Garcia") (collectively, "Defendants"), are entitled to dismissal of the Complaint for at least five reasons.

First, Sergeant Boulieris and Patrolman Garcia are cloaked with qualified immunity as to Plaintiff's 42 U.S.C. § 1983 and New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1, et seq., claims in Counts One, Two, and Five of the Complaint. For starters, qualified immunity applies because Plaintiff cannot point to violation of a statutory or constitutional right when he was criminally charged by the Perth Amboy Police Department and Middlesex County Prosecutor's Office and indicted by a Middlesex County Grand Jury. There was probable cause to charge, as evidenced by (1) the indictment itself, (2) the testimony of at least ten witnesses who testified at Plaintiff's criminal trial, and (3) the trial judge's decision to allow several counts of the indictment to be resolved by the jury. Plaintiff claims his son had motive to lie in testifying during the criminal proceedings, but that fact alone (which has never been proven, for that matter) does not negate probable cause (perhaps, at best, it creates reasonable doubt for a petit jury) and is not clearly exculpatory evidence. Considering the totality of the circumstances, the State had a well-grounded suspicion to believe that Plaintiff committed a crime. Alternatively, should a statutory

or constitutional right be implicated, Sergeant Boulieris and Patrolman Garcia are nevertheless immune from suit because Plaintiff did not have a "clearly established" right to a "better" investigation surrounding Jose's "reliability," as urged in the Complaint. Specifically, because there was no Supreme Court, Third Circuit, or robust consensus of persuasive authority in 2014 that put the constitutionality of Sergeant Boulieris and Patrolman Garcia's alleged conduct "beyond debate," Sergeant Boulieris and Patrolman Garcia are entitled to qualified immunity.

Second, Plaintiff's 42 U.S.C. § 1983 and NJCRA claims regarding the alleged Fifth and Fourteenth Amendment violations fail as a matter of law because of the "more-specific-provision" rule. Because Plaintiff's claims center around his ostensibly unlawful arrest, prosecution, conviction, and imprisonment, i.e., the termination of Plaintiff's freedom of movement through means intentionally applied, those claims are circumscribed to the Fourth Amendment, which explicitly covers illegal seizures. As such, Plaintiff cannot sustain a viable civil rights claim under the Fifth and Fourteenth Amendments.

Third, the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1, et seq., immunizes the City with respect to Plaintiff's common law malicious prosecution claim. Under the NJTCA, N.J. Stat. Ann. § 59:2-10 states that a public entity, like the City, "is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." Because Plaintiff alleges that Sergeant Boulieris and Patrolman Garcia, employees of the City, acted with malice in initiating Plaintiff's criminal prosecution, this NJTCA provision provides immunity to the City.

Fourth, Plaintiff's malicious prosecution claim against Sergeant Boulieris and Patrolman Garcia fails to state a claim upon which relief can be granted. As argued in Defendants' qualified immunity analysis, there was probable cause to criminally charge Plaintiff. In addition, Plaintiff's

Complaint is bereft of any facts that give rise to any inference—setting aside for a moment that Plaintiff must set forth plausible facts that support a reasonable inference—that Sergeant Boulieris and Patrolman Garcia's alleged conduct was animated with malice. Under well-settled Supreme Court and Third Circuit jurisprudence, the Federal Rules of Civil Procedure command much more to overcome the motion to dismiss stage.

Fifth, Plaintiff's common law negligence claim against Defendants fails as a matter of law because of NJTCA immunity. Under N.J. Stat. Ann. § 59:3-3, law enforcement officers, like Sergeant Boulieris and Patrolman Garcia, are immune from suit when they "act[] in good faith in the execution or enforcement of any law." Plaintiff does not dispute that Sergeant Boulieris and Patrolman were executing and enforcing New Jersey's criminal laws when the Perth Amboy Police Department investigated Plaintiff and charged him with several crimes. And to strip a public employee of this NJTCA immunity, New Jersey courts have routinely found that Plaintiff must prove more than mere negligence. By its very nature, Plaintiff's ordinary negligence claim, even if proven, cannot stand as a matter of law. In turn, the NJTCA confers the same immunity to the City for any alleged negligent training and supervision of Sergeant Boulieris and Patrolman Garcia.

For the above-stated reasons, Defendants' motion should be granted, and the Complaint should be dismissed, with prejudice.

## STATEMENT OF FACTS[1]

A.      Plaintiff's Arrest

According to the Complaint, on the morning of June 7, 2014, Plaintiff was at home with

his wife, Diana Garcia ("Diana"), and two sons, Jose Garcia ("Jose") and Aiden Garcia ("Aiden").

See ECF No. 1, ¶ 23. Jose came downstairs, where Plaintiff and Diana asked Jose to take a seat so

they could discuss a letter received from Jose's school about Jose's bad behavior. See id. At the

time, Jose was 15 years old and had been living with Plaintiff since December 2013 because Jose

had been constantly arguing with his biological mother, Marilyn Sanchez ("Marilyn"), who "was

having trouble disciplining" Jose. See id. ¶ 24; see also State v. J.L.G., No. A-3631-17, 2021 WL

3234769, at *1 (N.J. Super. Ct. App. Div. July 30, 2021) (observing that Jose was born in July

1998).[2] Plaintiff alleges that "Jose had a pattern of misconduct at school and was blatantly making

false accusations that would allow him to move back in with his mother, who essentially let him

do whatever he wanted." See ECF No. 1, ¶ 28. Jose described his relationship with his mother as

him "being a rebellious teen at the time, just hardheaded, didn't really want to listen to her." J.L.G.,

2021 WL 3234769, at *1.

Once seated with Plaintiff and Diana, Jose was reprimanded about his behavior at school

and informed that he would be spending his summer weekdays in a program called "Adelante"

---

[1] Given that this is a motion to dismiss on the pleadings, Defendants are required to state the facts as alleged in the Complaint, and the Court must accept the factual allegations of the Complaint (but not any conclusory statements unsupported by facts) in the light most favorable to Plaintiff. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). By setting forth the facts below for purposes of this motion, Defendants do not concede the truth of those allegations, many of which Defendants would take issue with, if the claims against Defendants are not dismissed.

[2] For ease of reference, the New Jersey Appellate Division's unpublished opinion in State v. J.L.G., No. A-3631-17, 2021 WL 3234769 (N.J. Super. Ct. App. Div. July 30, 2021), as referenced in Plaintiff's Complaint, is attached as **Exhibit A** to the Declaration of Michael T. Moran, Esq. ("Moran Decl.").

and working part-time on the weekends. <u>See</u> ECF No. 1, ¶ 25. Despite Plaintiff's desire of "help[ing] his son get on the right track," Jose "immediately objected" to this proposal. <u>See</u> <u>id.</u>

In the early morning hours of June 8, 2014, officers from the Perth Amboy Police Department knocked on Plaintiff's door and advised that there was a warrant for his arrest. <u>See</u> <u>id.</u> ¶ 26. Patrolman Garcia, who prepared the criminal complaint, went to Plaintiff's residence to effect the arrest and conduct a search for weapons. <u>See</u> <u>id.</u> ¶ 36. Plaintiff consented to a search of his home and was arrested, <u>see</u> <u>id.</u>, after the police recovered three operable firearms in Plaintiff's bedroom, namely a .38 caliber black Taurus revolver, a .38 caliber silver Taurus revolver, and a black Smith & Wesson nine-millimeter handgun, <u>J.L.G.</u>, 2021 WL 3234769, at *3. The black Taurus was located in Plaintiff's "duty belt, in the holster, underneath his work clothes on the floor of the closet." <u>Id.</u> Patrolman Garcia stated that "had he found loaded weapons or had seen anyone in the home with injuries, he would have indicated as such in his report." <u>See</u> ECF No. 1, ¶ 36.

Thereafter, Plaintiff purportedly learned that Jose told the police that Plaintiff had threatened the entire family with a gun. <u>See</u> <u>id.</u> ¶ 27. Plaintiff was employed as an armed security guard at various federal facilities and licensed to carry firearms. <u>See</u> <u>id.</u> Plaintiff claims that "there was no history of any domestic abuse in the family." <u>See</u> <u>id.</u> ¶ 29.

B.    <u>The Indictment, Prosecution, and Trial</u>

On September 26, 2014, following presentment by the Middlesex County Prosecutor's Office, a Middlesex County Grand Jury handed up Indictment Number 14-09-1098-I, charging Plaintiff with (1) three counts of fourth-degree aggravated assault with a firearm, in violation of N.J. Stat. Ann. § 2C:12-1b(4); (2) two counts of second-degree endangering the welfare of a child, in violation of N.J. Stat. Ann. § 2C:24-4a(2); (3) one count of third-degree terroristic threats, in violation of N.J. Stat. Ann. § 2C:12-3a; and (4) one count of second-degree possession of a weapon

for an unlawful purpose, in violation of N.J. Stat. Ann. § 2C:39-4a. <u>See</u> Amended Judgment of Conviction, attached as **Exhibit B** to Moran Decl.

A four-day trial commenced on February 28, 2017 before the Honorable Joseph L. Rea, J.S.C., in Middlesex County Superior Court. <u>See</u> ECF No. 1, ¶ 30; <u>J.L.G.</u>, 2021 WL 3234769, at *1.

Jose testified that on the morning of June 7, 2014, he awoke to a "commotion" coming from downstairs. <u>Id.</u> at *2. Jose stated that Plaintiff and Diana, Jose's stepmother, were "[a]rguing" loud enough to wake him up. <u>Id.</u> Once awake, Jose proceeded to get ready for Aiden's fourth birthday party, which was scheduled for later that day. <u>Id.</u> While he was getting ready, Jose was "summoned downstairs" by Diana in a "worried voice." <u>Id.</u> Jose went downstairs and asked Plaintiff and Diana "what's going on," but received no response and returned upstairs to his bedroom. <u>Id.</u> Once upstairs, Diana called Jose for a second time, but in a "louder" and "more demanding" tone. <u>Id.</u> Jose "ran downstairs as fast as [he] could" and observed Plaintiff holding Diana's "wrists" with one hand while "his other hand was balled up into a fist." <u>Id.</u>

Jose immediately "got in-between" Plaintiff and Diana and gave Plaintiff a "bear hug" to try to "restrain him." <u>Id.</u> Jose "believe[d]" that he detected the smell of alcohol emanating from Plaintiff's breath and stated that Plaintiff became "aggressive" "when he [was] drunk." <u>Id.</u> Jose implored Plaintiff to "calm down" because Aiden was in the living room witnessing the altercation, and Plaintiff became "emotional and cried on [Jose's] shoulder" while whispering "I'm going to kill all you . . . motherfuckers." <u>Id.</u>

After the confrontation, Plaintiff went upstairs to his bedroom and Jose followed. <u>Id.</u> There, Jose observed Plaintiff "take his work gun out of [its] holster," which "was attached to [Plaintiff's] work belt . . . on the floor." <u>Id.</u> Jose described the firearm as a "black revolver." <u>Id.</u> Jose again

attempted to restrain Plaintiff and persuaded him to "put [the gun] away," but the endeavor failed as Plaintiff returned downstairs with the firearm. Id. Jose, who was sitting on the top of the stairs, could not see into the living room from his vantage point, but heard Diana say "get that gun out of my face." Id. Jose also heard Diana state that "he didn't need to be seeing this," referring to Aiden, at which point Jose heard "a smack[,] . . . [k]inda like a facial smack." Id.

Subsequently, Plaintiff returned upstairs and placed "the barrel of the gun to [Jose's] cheek and then . . . put [the gun] in [Jose's] hand" when Plaintiff reached Jose on the stairs. Id. Jose explained that he felt the gun "pushing against [his] braces." Id. Plaintiff showed Jose that the firearm was loaded and taunted Jose that he "had no balls as a man" to shoot when Plaintiff handed the firearm to him. Id. Thereafter, Plaintiff walked away to his bedroom and kicked Jose in the lower back. Id.

After the incident, Jose called his mother, Marilyn, and indicated that he wanted to come home. Id. Marilyn directed Jose to gather his belongings while she made arrangements to have him picked up. Id. In the meantime, Jose attended Aiden's birthday party, which Plaintiff did not attend. Id. During the car ride to the party, Diana instructed Jose to "keep [his] mouth shut about" the incident. Id.

While Jose was at the birthday party, Marilyn contacted her sister (i.e., Jose's aunt), who lived closer to Plaintiff's Perth Amboy residence, and arranged for Jose's pick-up. Id. Jose's aunt picked him up at Plaintiff's home after the party and brought him to her house to await Marilyn's arrival. Id. Upon arrival, Marilyn found Jose "scared" and "terrified" and took Jose to the Perth Amboy Police Department in the early morning hours of June 8, 2014, where a recorded statement was taken. Id. At the Perth Amboy Police Department, Jose was interviewed by Sergeant Boulieris, who has expertise with "matters involving juveniles." Id. at *4. Plaintiff alleges that Sergeant

Boulieris' "focus was on retrieving a statement from Jose and [] [Sergeant Boulieris] did not interview anyone else regarding the allegations against [Plaintiff]." See ECF No. 1, ¶ 35. Plaintiff further maintains that Sergeant Boulieris "did not investigate the inconsistencies in Jose's statement or look into Jose's reputation for making false statements." Id.

Marilyn acknowledged text messages to Plaintiff, wherein she called Jose a "[c]ompulsive liar" and stated Jose "lied so much that [she] didn't believe . . . an f'ing word out of his mouth," but believed Jose during the call on June 7, 2014 "because it was out of character for him to be that upset." J.L.G., 2021 WL 3234769, at *3. Plaintiff agrees that Jose's trial testimony echoed "the same story he had told the police almost three years earlier," see ECF No. 1, ¶ 31; see also J.L.G., 2021 WL 3234769, at *4 ("The [recorded] statement was consistent with [Jose]'s trial testimony."), but Jose denied the suggestion that he "fabricated" the incident to avoid a "more regimented summary schedule" and "return to his mother's house in South Jersey," J.L.G., 2021 WL 3234769, at *3.

Diana testified and denied that anything transpired on June 7, 2014. Id. She stated that Jose contrived the entire incident so that he could return to his mother's home and avoid Plaintiff's "strict" regimented schedule. Id. According to Diana, the only argument on June 7, 2014 was about Jose's poor grades and behavior. Id. She also denied being a victim of domestic violence, despite being presented with testimony from a New Jersey Division of Child Protection & Permanency ("DCPP") caseworker in which she observed visible bruises on Diana's "face and chest area" during a visit to the family home on June 9, 2014. Id. Diana claimed that the bruises were caused by "an anemic condition" and a "fall" in a parking lot. Id. Plaintiff also denied domestic violence, claiming that the bruises were due to him being "very rough with" Diana. Id. at *4.

8

Aiden testified that, on the day of the incident, he saw Plaintiff holding a "Maglite."[3] Id. Aiden mistakenly believed that the Maglite was a gun and acknowledged that, when he previously came to court, he stated that Plaintiff "had a MegaBlaster." Id. Aiden conceded that, prior to testifying at trial, he had a "recent[]" "discussion" with Plaintiff about a Maglite issue. Id. Nicole Ortiz, a forensic interview specialist at the Middlesex County Prosecutor's Office, testified that she interviewed Aiden on June 19, 2014, 12 days after the incident, and Aiden never mentioned seeing Plaintiff with a Maglite or flashlight. Id.

At the end of the State' case, Plaintiff moved for a judgment of acquittal, which was granted in part. Id. Judge Rea dismissed the fourth-degree aggravated assault with a firearm and second-degree child endangerment charges as to Aiden, but the remaining counts survived the motion. Id.

Plaintiff testified on his own behalf and denied Jose's version of events, describing it as "a false story" that was entirely "made up." Id. Plaintiff believed that Jose was "always being a liar," and he was trying to keep Jose "out of trouble." Id. According to Plaintiff, on June 7, 2014, he and Diana sat down with Jose "to reprimand" him for his behavior at school. Id. Jose was told he would be attending Adelante full-time and getting a part-time job, which Jose "was not too thrilled" about. Id.

Regarding the alleged incident, Plaintiff admitted to consuming "one drink" with Diana on the morning of June 7, 2014, but denied pointing a firearm at any member of his family. Id. Plaintiff explained that when Aiden testified about the Maglite/gun issue, Aiden was referring to a prior conversation "[a] while back" when Plaintiff explained the items on his work belt. Id. Plaintiff also stated that Aiden could not "differentiate time that well." Id. Plaintiff conceded that he did not

---

[3] Aiden clarified that the Maglite was "just a flashlight." J.L.G., 2021 WL 3234769, at *4 n.6.

attend Aiden's birthday party, but denied that he was passed out because of the altercation. Id. Rather, Plaintiff stated that he did not attend because of a migraine. Id.

On rebuttal, the State produced DCPP caseworker Lisa Androsko, who responded to Plaintiff's residence on June 9, 2014 after Plaintiff was released from custody. Id. at *5. Plaintiff told Androsko that, after returning home from work on June 6, 2014, he remained in his vehicle "relaxing" and did not enter his home until "around [10:00] a.m.," the following morning, June 7, 2014. Id. Plaintiff explained that he went inside the family home, where his wife began questioning his whereabouts and the two individuals argued. Id. Plaintiff told Androsko that he and his wife "were drinking . . . at 11:30 a.m." on the morning of June 7, 2014. Id. More specifically, Plaintiff indicated that he had consumed "two Bacardi and Sprite drinks, and his wife had three of the same drinks." Id. Neither Plaintiff nor Diana mentioned the Adelante program to Androsko. Id.

Notwithstanding at least ten witnesses called by the State and defense at trial, Plaintiff maintains that "Jose was [an] unreliable witness, [and] his lies were the sole basis for the prosecution." See ECF No. 1, ¶ 36.

On March 3, 2017, a Middlesex County Jury returned a verdict and found Plaintiff guilty of (1) fourth-degree aggravated assault with a firearm as to Jose, in violation of N.J. Stat. Ann. § 2C:12-1b(4); (2) the disorderly persons offense of simple assault as to Diana (a lesser included offense of fourth-degree aggravated assault with a firearm), in violation of N.J. Stat. Ann. § 2C:12-1a(3); (3) second-degree endangering the welfare of a child as to Jose, in violation of N.J. Stat. Ann. § 2C:24-4a(2); (4) third-degree terroristic threats as to Jose, in violation of N.J. Stat. Ann. § 2C:12-3a; and (5) second-degree possession of a weapon for an unlawful purpose, in violation of N.J. Stat. Ann. § 2C:39-4a. See **Exhibit B** to Moran Decl.

On December 11, 2017, Plaintiff was sentenced to an aggregate term of five years' imprisonment with a three-and-one-half-year period of parole ineligibility. J.L.G., 2021 WL 3234769, at *1; **Exhibit B** to Moran Decl.

Upon entry of the judgment of conviction, Plaintiff filed a notice of appeal with the New Jersey Appellate Division. See ECF No. 1, ¶ 38.

C.      The Appellate Remand and Dismissal

On July 30, 2021, the New Jersey Appellate Division reversed Plaintiff's conviction and remanded the matter for a new trial. J.L.G., 2021 WL 3234769, at *7-8. The court held that the trial judge "mistakenly exercised its discretion in admitting [Jose]'s prior consistent statement" to law enforcement to bolster Jose's credibility.[4] Id. at *7. It noted that "the State's case rested entirely on the jury crediting [Jose]'s account over [Plaintiff]'s denials. [Jose] was the only witness who implicated [Plaintiff] and was therefore the lynchpin of the State's case." Id. at *8. Further, Jose's "purported motive to lie" existed from the time the prior statement was made, i.e., June 7, 2014, through trial. Id. at *7. Because the Plaintiff's criminal trial implicated "a pitched credibility battle" between Plaintiff and Jose, the court concluded that "the erroneous admission of the prior consistent statement tipped the credibility scale, unfairly bolstered the State's proofs, and improperly influenced the jury." Id. at *8.

---

[4] See Palmisano v. Pear, 703 A.2d 966, 970 (N.J. Super. Ct. App. Div. 1997) ("A prior consistent statement offered to bolster a witness' testimony is inadmissible."); N.J. R. Evid. 803(a)(2) (stating that testimony is not hearsay where "[t]he declarant-witness testifies and is subject to cross-examination about a prior otherwise admissible statement, and the statement . . . is consistent with the declarant-witness' testimony and is offered to rebut an express or implied charge against the declarant-witness of (A) recent fabrication or (B) improper influence or motive").

Following the appellate remand, the Honorable Thomas J. Buck, J.S.C., granted the State's motion and dismissed the indictment on December 6, 2021. See Order Dismissing the Indictment, attached as **Exhibit C** to Moran Decl.

According to the Complaint, Plaintiff was imprisoned from 2017 to 2021 on the aforementioned criminal charges. See ECF No. 1, ¶ 42.

## PROCEDURAL HISTORY

On December 5, 2023, Plaintiff filed a five-count Complaint with this Court.[5] See ECF No. 1. Plaintiff seeks monetary damages for being "wrongfully prosecuted, indicted, tried, convicted, and imprisoned" and in connection with alleged violations of his federal and state common law, statutory, and constitutional rights. See id. ¶¶ 1, 9. He claims that "[t]he wrongful conviction and ensuing damages were caused by the intentional and malicious conduct of Defendants Sergeant Panagioti Boulieris and Ptl. Anthony Garcia, police officers within the Perth Amboy Police Department responsible for the arrest and the initiation of criminal proceedings against [Plaintiff], and the City of Perth Amboy." See id. ¶ 3. Sergeant Boulieris and Patrolman Garcia are being sued in their individual capacities only, and the City's liability is predicated on the doctrine of respondeat superior. See id. ¶¶ 14, 16.

In Count One of the Complaint, Plaintiff brings a 42 U.S.C. § 1983 claim against Sergeant Boulieris and Patrolman Garcia for "initiat[ing] a prosecution against Plaintiff without probable cause," in violation of the Fourth Amendment of the United States Constitution. See id. ¶¶ 46, 48.

---

[5] On the same day, Plaintiff filed a Complaint in Middlesex County Superior Court captioned Jose L. Garcia v. New Jersey Department of the Treasury, No. MID-L-6825-23 (N.J. Super. Ct. Law Div. Dec. 5, 2023), asserting a claim under the New Jersey Mistaken Imprisonment Act, N.J. Stat. Ann. § 52:4C-1, et seq.

He claims that "[t]he grand jury indictment is a nullity because it was procured using false evidence and statements and by withholding exculpatory evidence and statements." See id. ¶ 47.

In Count Two of the Complaint, Plaintiff asserts a 42 U.S.C. § 1983 claim against Sergeant Boulieris and Patrolman Garcia for due process violations, such as "provid[ing] false evidence and statements to the prosecution, defense counsel, and court, including statements from an unreliable witness, Plaintiff's teenage son." See id. ¶ 53. Plaintiff avers that he "was deprived of due process and trial rights guaranteed under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution to be free from prosecution based on false statements and under Brady v. Maryland, 373 U.S. 83 (1963)." See id. ¶ 54.

In Count Three of the Complaint, Plaintiff asserts a common law malicious prosecution claim against all Defendants, maintaining that "Defendants initiated a prosecution against Plaintiff without probable cause, and with malice, and that prosecution resolved in a complete dismissal of the charges." See id. ¶ 57. He contends that the City "is liable for the conduct of the Individual Defendants and any damages they caused under the doctrine of respondeat superior." See id. ¶ 61.

In Count Four of the Complaint, Plaintiff brings a common law negligence claim against all Defendants. See id. at Count Four. He alleges that Sergeant Boulieris and Patrolman Garcia "negligently performed their jobs" and the City "was also negligent in failing to train and supervise the Individual Defendants, allowing them to provide inaccurate evidence from an unreliable witness." See id. ¶¶ 63-64.

In Count Five of the Complaint, Plaintiff brings an NJCRA claim against Sergeant Boulieris and Patrolman Garcia. See id. at Count Five. Plaintiff posits that Sergeant Boulieris and Patrolman Garcia violated his "constitutional rights[,] including the rights to not be unlawfully seized, the right to due process, and the right to a fair prosecution, fair pretrial process, and fair

13

trial," when they "provided false evidence and statements to the prosecution, defense counsel, and court, including statements from an unreliable witness, Plaintiff's teenage son." See id. ¶¶ 69-70.

Defendants now move to dismiss the Complaint, with prejudice, for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A pleading that simply offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id. To that end, a district court must disregard all "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878-79 (3d Cir. 2018). At this procedural juncture, the court may consider the complaint, exhibits attached to the complaint, matters of public record, and prior judicial decisions. McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Under the Iqbal and Twombly pleading regime, a district court must undertake a three-prong analysis. See Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2009). First, the court should "tak[e] note of the elements a plaintiff must plead to state a claim." Id. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id.; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (holding that "[f]actual allegations must be enough to raise a right to relief above the speculative level").

Third, when a plaintiff's complaint contains "well-pleaded factual allegations," the allegations should be presumed veracious, and the court should ascertain whether they "plausibly give rise to an entitlement for relief." Malleus, 641 F.3d at 563; see also City of Cambridge, 908 F.3d at 878 (finding that a district court must accept "all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff"). This finding requires more than a mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

## ARGUMENT

### POINT I

**SERGEANT BOULIERIS AND PATROLMAN GARCIA ARE ENTITLED TO QUALIFIED IMMUNITY AND DISMISSAL OF COUNTS ONE, TWO, AND FIVE OF THE COMPLAINT.[6]**

Qualified immunity is an affirmative defense that protects government officials who perform discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). It confers upon officials "breathing room to make reasonable but mistaken judgments about open legal questions" and shields "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

A qualified immunity analysis hinges on the "objective legal reasonableness" of a government actor's conduct, which must be "assessed in light of the legal rules that were 'clearly

---

[6] Qualified immunity applies to claims brought under 42 U.S.C. § 1983 and its New Jersey counterpart, the NJCRA. See Harz v. Borough of Spring Lake, 191 A.3d 547, 554 (N.J. 2018) (noting the NJCRA is modeled off 42 U.S.C. § 1983); Cruz v. Camden Cnty. Police Dep't, 245 A.3d 254, 259 (N.J. Super. Ct. App. Div.) (observing that qualified immunity applies to NJCRA claims and "tracks the federal standard"), certif. denied, 254 A.3d 1180 (N.J. 2021).

established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982)). Qualified immunity is a threshold legal issue and should be resolved at the outset of litigation, see Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995), because it protects officials from having to stand trial or face the burdens associated with litigation, see Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

Once a defendant raises a qualified immunity defense, the plaintiff is charged with proving that (1) the government official violated a statutory or constitutional right; and (2) the asserted right was "clearly established" at the time of the challenged conduct. al-Kidd, 563 U.S. at 735. Courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first," Pearson, 555 U.S. at 236, and can dismiss claims under prong two "without ever ruling on" prong one and vice versa, Camreta v. Greene, 563 U.S. 692, 705 (2011).

Defining the statutory or constitutional right at issue is critical in assessing whether that right was "clearly established." Anderson, 483 U.S. at 639. Broad and generalized constitutional principles will not defeat qualified immunity. See Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016). This demanding standard dictates that a right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 577 U.S. 7, 11 (2015) (internal quotations omitted). For example, the Supreme Court has found that "[q]ualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." City & Cnty. of San Francisco v. Sheehan, 575 U.S. 600, 613 (2015). Rather, existing law must have placed the lawfulness of a government actor's conduct "beyond debate," meaning the legal principle in question must be governed by

"controlling authority" or "a robust 'consensus of cases of persuasive authority.'" <u>District of Columbia v. Wesby</u>, 583 U.S. 48, 63 (2018) (citations omitted).

A qualified immunity "inquiry focuses on the state of the relevant law when the violation allegedly occurred." <u>Williams v. Sec'y Pa. Dep't of Corr.</u>, 848 F.3d 549, 570 (3d Cir. 2017). In the Third Circuit, courts "typically look to Supreme Court precedent or a consensus in the Courts of Appeals" to determine if an official has "fair warning that his conduct would be unconstitutional" and that the contours of the right are "sufficiently clear." <u>Kedra v. Schroeter</u>, 876 F.3d 424, 449-50 (3d Cir. 2017).

Here, Plaintiff's federal and state civil rights claims fail because Plaintiff cannot show that (1) Sergeant Boulieris and Patrolman Garcia violated any statutory or constitutional right because probable cause to charge existed, as confirmed by, <u>inter alia</u>, the grand jury's indictment and witnesses' trial testimony; and (2) even assuming a statutory or constitutional right was violated, such a right was not "clearly established" in 2014 because Plaintiff did not have a right to an investigation concerning Jose's "reliability" before being criminally charged. Each argument will be addressed in turn.

A.    <u>Statutory or Constitutional Right</u>

Plaintiff cannot point to a violation of any statutory or constitutional right, let alone a "clearly established" right. Distilled to its core, Plaintiff's claims have their genesis in the conclusory allegation that Sergeant Boulieris and Patrolman Garcia engaged in "intentional and malicious conduct," which led to Plaintiff's criminal charges and conviction in New Jersey state court. <u>See</u> ECF No. 1, ¶ 3. However, there was <u>ample</u> probable cause to criminally charge and arrest Plaintiff. Critically, the fact that the State ultimately dismissed the charges following an appellate remand is of no moment. <u>See</u> <u>Brinegar v. United States</u>, 338 U.S. 160, 174-75 (1949)

(recognizing that the "distinct issues" of probable cause and guilt beyond a reasonable doubt entail different standards of proof); Orsatti, 71 F.3d at 482-83 (observing that probable cause "does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt"); Dempsey v. Bucknell Univ., 834 F.3d 457, 467 (3d Cir. 2016) (holding that the probable cause standard is less exacting than proof beyond a reasonable doubt and requires "'a fair probability' that the person committed the crime at issue" (quoting Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000))); State v. Waltz, 293 A.2d 167, 170 (N.J. 1972) (defining probable cause as "a well-grounded suspicion that a crime was being committed"); Schneider v. Simonini, 749 A.2d 336, 350 (N.J. 2000) (affirming that "[p]robable cause is a suspicion or belief that is well-grounded in facts").

As a threshold matter, a Middlesex County Grand Jury returned a multi-count indictment against Plaintiff, finding that probable cause existed as to three counts of fourth-degree aggravated assault with a firearm, two counts of second-degree endangering the welfare of a child, one count of third-degree terroristic threats, and one count of second-degree possession of a weapon for an unlawful purpose. See **Exhibit B** to Moran Decl. Under Third Circuit case law, the indictment is prima facie evidence of probable cause. See Rose v. Bartle, 871 F.2d 331, 353 (3d Cir. 1989). Even more, Judge Rea, believing there was enough substantive evidence to sustain a conviction, dismissed only two counts of the indictment when Plaintiff moved for a judgment of acquittal at the end of the State's case at trial and permitted the remaining five counts of the indictment to go before the jury. J.L.G., 2021 WL 3234769, at *4; see also State v. Jones, 231 A.3d 549, 556 (N.J. 2020) ("A judgment of acquittal shall be entered '[a]t the close of the State's case . . . if the evidence is insufficient to warrant a conviction.'" . . . We view 'the State's evidence in its entirety,

18

be that evidence direct or circumstantial.'" (quoting N.J. Ct. R. 3:18-1; State v. Reyes, 236 A.2d 385, 388 (N.J. 1967))).

In New Jersey, a grand jury is an accusatory body—not an adjudicatory body—and tasked with ascertaining whether the State has mounted a prima facie case against the accused. See State v. Hogan, 676 A.2d 533, 542 (N.J. 1996). Although Plaintiff argues that the indictment is a "nullity" because the State "us[ed] false evidence and statements and [] [withheld] exculpatory evidence and statements," see ECF No. 1, ¶ 47, Plaintiff fails to specify which "exculpatory evidence and statements" were withheld. Jose's account of events has never been proven false or a "lie," and the Appellate Division even noted that Jose's recorded statement to Sergeant Boulieris was consistent with his trial testimony. See J.L.G., 2021 WL 3234769, at *4.

In any event, at the grand jury stage, where probable cause determinations are made, the New Jersey Supreme Court only requires that prosecutors present evidence "that both directly negates the guilt of the accused and is clearly exculpatory." Hogan, 676 A.2d at 543 (emphasis added). Jose's purported unreliability and incredible testimony are not "clearly exculpatory" and were properly scrutinized by a petit jury, not a grand jury. See id. at 542 (recognizing that the State is not under the obligation to disclose evidence to a grand jury "if believed, would establish that the accused did not commit the crime in question" because credibility determinations and resolution of factual disputes are exclusively reserved for petit juries). And as the Appellate Division in Plaintiff's criminal prosecution aptly observed, "the State's case rested entirely on the jury crediting [Jose]'s account over [Plaintiff]'s denials" and confronted "a pitched credibility battle" between Plaintiff and Jose. J.L.G., 2021 WL 3234769, at *8.

Moreover, while Plaintiff focuses all his energy on Jose's allegedly "unreliable," "false," and "made up" statements and testimony (as Plaintiff must for purposes of his lawsuit), he neglects

to acknowledge the entirety of the witnesses' trial testimony. That is, he ignores the DCPP caseworker's testimony that she observed visible bruises on Diana's "face and chest area" during a visit to the family home on June 9, 2014. See J.L.G., 2021 WL 3234769, at *3. In addition, although they both denied domestic abuse, Plaintiff and Diana's testimony on this issue was oddly dissimilar. Compare id. (Diana testifying that the bruises were caused by "an anemic condition" and a "fall" in a parking lot"), with id. at *4 (Plaintiff testifying that the bruises were due to him being "very rough with" Diana). Plaintiff also fails to appreciate Aiden's far-from-convincing and unreliable testimony about the Maglite/gun that he claimed to see and the "recent[]" "discussion" that he had with his father about that specific issue (which Aiden never mentioned to Nicole Ortiz from the Middlesex County Prosecutor's Office in an interview 12 days after the incident), thereby allowing a reasonable jury to conclude that Plaintiff somehow coached and/or improperly influenced his minor and impressionable son's trial testimony. See id. at *4. Couple the aforementioned testimony with Jose's detailed recitation about the incident and Marilyn's testimony about believing that her son was in harm's way, see id. at *3, there was certainly a well-grounded suspicion that Plaintiff committed a crime—at the very least, simple assault—under New Jersey law. See, e.g., N.J. Stat. Ann. § 2C:12-1a(3) ("A person is guilty of assault if the person . . . [a]ttempts by physical menace to put another in fear of imminent serious bodily injury.").

Furthermore, Jose's trial testimony provides further support with the State's other witnesses' testimony that Plaintiff committed aggravated assault, endangering the welfare of a child, terroristic threats, and possession of a weapon for an unlawful purpose. See N.J. Stat. Ann. § 2C:12-1b(4) ("A person is guilty of aggravated assault if he . . . [k]nowingly under circumstances manifesting extreme indifference to the value of human life points a firearm . . . at or in the direction of another, whether or not the actor believes it to be loaded[.]"); N.J. Stat. Ann. § 2C:24-

20

4a ("Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child . . . is guilty of a crime of the second degree."); N.J. Stat. Ann. § 2C:12-3a ("A person is guilty of a crime of the third degree if he threatens to commit any crime of violence with the purpose to terrorize another[.]"); N.J. Stat. Ann. § 2C:39-4a(1) ("Any person who has in his possession any firearm with a purpose to use it unlawfully against the person or property of another is guilty of a crime of the second degree."). Namely, Jose's testimony (and consistent recorded statement to Sergeant Boulieris) about the June 7, 2014 incident chronicles the following events: (1) Plaintiff whispering to Jose "I'm going to kill all you . . . motherfuckers"; (2) Jose hearing Diana telling Plaintiff to "get that gun out of my face"; (3) Jose hearing "a smack[,] . . . [k]inda like a facial smack" after Diana stated to Plaintiff that Aiden "didn't need to be seeing this," specifically the altercation with Plaintiff's firearm; (4) Plaintiff placing the barrel of a gun on Jose's cheek and against Jose's braces; and (5) Plaintiff taunting Jose with a firearm and telling Jose, a 15-year-old minor, that he "had no balls as a man" to shoot the firearm. J.L.G., 2021 WL 3234769, at *2.

Based on the totality of the circumstances, probable cause to charge was clearly present, see State v. Sullivan, 777 A.2d 60, 67-68 (N.J. 2001) ("[C]ourts must consider the totality of the circumstances . . . in considering whether probable cause has been established."), and a petit jury was properly entrusted with determining whether Plaintiff or Jose was more credible, as the Appellate Division duly noted, and whether the State had sufficient evidence at trial to prove its case beyond a reasonable doubt. See State v. Cook, 750 A.2d 91, 99 (N.J. Super. Ct. App. Div. 2000) ("A grand jury is an accusatory rather than an adjudicative body."). Importantly, the decision to criminally charge rested entirely with the State through the Middlesex County Prosecutor's

Office, not a court. See United States v. Patel, No. 20-613, 2023 WL 363052, at *24 (D.N.J. Jan. 23, 2023) ("[T]his Court lacks authority to second guess the Government's decision to file criminal charges[.]"). Equally significant, the Appellate Division never ruled that the State lacked probable cause to charge Plaintiff; it simply concluded that the trial judge erroneously admitted Jose's prior consistent statement to law enforcement at trial to bolster Jose's credibility. See J.L.G., 2021 WL 3234769, at *8 ("[W]e are persuaded that the erroneous admission of the prior consistent statement tipped the credibility scale, unfairly bolstered the State's proofs, and improperly influenced the jury." (emphasis added)). Therefore, because there was no violation of any statutory or constitutional right, qualified immunity attaches to Plaintiff's federal and state civil rights claims, and same should be dismissed, with prejudice. See Hunter v. Bryant, 502 U.S. 224, 227-28 (1991) (holding that where qualified immunity is asserted, the issue of probable cause is one for the court since "the entitlement is immunity from suit rather than a mere defense to liability" (quoting Mitchell, 472 U.S. at 511)).

B.    Clearly Established Statutory or Constitutional Right

Should the Court conclude that a statutory or constitutional right is implicated (which it should not), Plaintiff cannot show that Sergeant Boulieris and Patrolman Garcia violated a "clearly established" right. At their heart, Plaintiff's allegations take issue with Sergeant Boulieris and Patrolman Garcia's alleged failure to investigate Jose's "unreliability" as a witness and Jose's statements regarding the June 7, 2014 incident. See ECF No. 1, ¶ 35 ("Sergeant Boulieris admitted that from the beginning of the investigation, his focus was on retrieving a statement from Jose and that he did not interview anyone else regarding the allegations against [Plaintiff]. Furthermore, he did not investigate the inconsistencies in Jose's statement or look into Jose's reputation for making false statements." (emphasis added)); id. ¶ 36 ("Ptl. Garcia was responsible for preparing the

22

criminal complaints and went to [Plaintiff]'s home on the morning of June 8, 2014 to arrest him and to conduct a search for the weapons. Ptl. Garcia admitted that had he found loaded weapons or had seen anyone in the home with injuries, he would have indicated as such in his report.").

However, the Third Circuit has concluded that "[t]here is no statutory or common law right, much less a constitutional right, to an investigation." Fuchs v. Mercer Cnty., 260 F. App'x 472, 475 (3d Cir. 2008); see also Michaels v. New Jersey, 222 F.3d 118, 123 (3d Cir. 2000) (conferring qualified immunity when the defendants "employed improper interview techniques with the children"); Tomer v. Gates, 811 F.2d 1240, 1242 (9th Cir. 1987) ("[E]ven an allegation of malicious prosecution does not generally implicate a clearly established constitutional right."); Lewis v. City of Philadelphia, No. 19-2847, 2020 WL 1683451, at *11 (E.D. Pa. Apr. 6, 2020) ("[N]umerous judges in this district have recognized that an inadequate police investigation does not independently violate any constitutional right."). Defendants were not statutorily or constitutionally mandated to investigate Jose's "inconsistencies" or "reputation for making false statements," and there is no decisional law imposing such an onerous and unworkable requirement. See Smith v. Reddy, 882 F. Supp. 497, 501 (D. Md. 1995) ("Section 1983 is also not a license for a jury's hindsight assessment of the thoroughness of a police investigation[.]"); id. at 501-03 (holding that a police officer's alleged omissions as to a complaining witness' credibility did not defeat the officer's claim of qualified immunity). To hold otherwise, law enforcement officers and prosecutors would virtually never pursue criminal charges where the prosecution rises and falls on witness credibility, as no witness—by any stretch of the imagination—has a perfect or unblemished character that cannot be discredited at trial. See State v. Rivera, 99 A.3d 847, 856 (N.J. Super. Ct. App. Div. 2014) (affirming the notion that "the exclusive province of the jury [is] to resolve factual disputes, assess credibility and decide whether the State's evidence establishes

guilt"). The absence of precedential Supreme Court or Third Circuit authority or a robust consensus among the Courts of Appeals establishing the right to a constitutionally sufficient investigation compels the inescapable conclusion that, even assuming this right exists, it was not "clearly established" in 2014. See Mammaro, 814 F.3d at 169 (articulating that for qualified immunity to apply, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited").

Therefore, whether a constitutional right to an investigation into a witness' credibility and reputation in the community exists, Sergeant Boulieris and Patrolman Garcia are entitled to qualified immunity because this right was not "clearly established" in 2014. Accordingly, Counts One, Two, and Five of the Complaint should be dismissed, with prejudice.

## POINT II

**IN THE ALTERNATIVE, PLAINTIFF'S 42 U.S.C. § 1983 AND NJCRA CLAIMS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS ARE FORECLOSED BY THE "MORE-SPECIFIC-PROVISION" RULE.**

When analyzing a civil rights claim, the first step is to identify the specific constitutional right that was allegedly infringed. Graham v. Connor, 490 U.S. 386, 394 (1989). Under the so-called "more-specific-provision" rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth Amendment or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Wharton v. Danberg, 854 F.3d 234, 246 (3d Cir. 2017) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)). Stated differently, where a plaintiff challenges governmental action under multiple constitutional provisions, the more specific source of

24

constitutional protection prevails. See Betts v. New Castle Youth Dev. Ctr., 621 F.2d 249, 260-61 (3d Cir. 2010); Porter v. Pa. Dep't of Corr., 974 F.3d 431, 448 (3d Cir. 2020).

Here, Counts Two and Five of the Complaint assert due process claims in relation to Plaintiff's arrest, prosecution, conviction, and imprisonment. Against this backdrop, Plaintiff's claims can only be brought under the Fourth Amendment, which is the primary constitutional source against unreasonable searches and seizures.[7] See Lawson v. City of Coatesville, 42 F. Supp. 3d 664, 676 (E.D. Pa. 2014) (dismissing a plaintiff's substantive due process claim under the more-specific-provision rule where the plaintiff's arrest and pre-trial detention were "seizures within the meaning of the Fourth Amendment" and "covered by the specific protections of the Fourth Amendment"); McCall v. City of Philadelphia, 396 F. Supp. 3d 549, 556 (E.D. Pa. 2019) ("The Court construes the reference to the Fourteenth Amendment simply as incorporating Plaintiffs' Fourth Amendment claims of unreasonable use of force, unlawful arrest and search, and malicious prosecution against the City and Police Officers as state actors.").

More specifically, the standard applicable in this case is the Fourth Amendment's guarantee that citizens have the right "to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. Indeed, the Third Circuit has recognized that "[w]hen the state places constitutionally significant restrictions on a person's freedom of movement for the purpose of obtaining his presence at a judicial proceeding, that person has been seized within the meaning of the Fourth Amendment." Schneyder v. Smith, 653 F.3d 313, 321-22 (3d Cir. 2011); see also Brower v. Cnty. of Inyo, 489 U.S. 593, 597 (1989) (articulating that a Fourth Amendment seizure

---

[7] In any event, Plaintiff's Fifth Amendment due process claim fails as a matter of law because that constitutional provision is restricted to federal actors, not municipal actors like Sergeant Boulieris and Patrolman Garcia. See Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983); Nemeth v. Off. of Clerk of Superior Court of N.J., 837 F. App'x 924, 929 n.5 (3d Cir. 2020).

occurs when there is a government termination of freedom of movement through means intentionally applied). Because Plaintiff's unreasonable seizure claim can be repackaged under the more specific Fourth Amendment, it is not cognizable under the Fifth or Fourteenth Amendment. See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (noting a "reluct[ance] to expand the concept of substantive due process" when "a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior" (citations omitted)); Abuomar v. Dep't of Corr., 754 F. App'x 102, 107 (3d Cir. 2018) ("Because Abuomar challenges the same conduct under both the Fourth and Fourteenth Amendments, the 'more-specific-provision' rule applies, and they are entitled to summary judgment on Abuomar's Fourteenth Amendment claim.").

Therefore, Counts Two and Five of the Complaint should be dismissed to the extent that Plaintiff's constitutional claims under the Fifth and Fourteenth Amendments are precluded by the more-specific-provision rule.

**POINT III**

### N.J. STAT. ANN. § 59:2-10 IMMUNIZES THE CITY WITH RESPECT TO PLAINTIFF'S MALICIOUS PROSECUTION CLAIM IN COUNT THREE OF THE COMPLAINT.

The NJTCA is a comprehensive statutory scheme that establishes the parameters for tort claims against public entities and employees, including substantive rules pertaining to immunity from suit. See N.J. Stat. Ann. § 59:1-1, et seq. It modified the traditional sovereign immunity doctrine and established the limited circumstances in which a party may assert tort claims against public entities. Feinberg v. N.J. Dep't of Envtl. Prot., 644 A.2d 593, 596 (N.J. 1994). The NJTCA's guiding principle is that "immunity from tort liability is the general rule and liability is the exception." Coyne v. State, Dep't of Transp., 867 A.2d 1159, 1163 (N.J. 2005) (quoting Garrison v. Twp. of Middletown, 712 A.2d 1101, 1103 (N.J. 1998)).

New Jersey courts have long recognized that public entity and employee immunity is the NJTCA's dominant theme. Aversano v. Palisades Interstate Parkway Comm'n, 832 A.2d 914, 919 (N.J. Super. Ct. App. Div. 2003), aff'd in part and modified in part, 851 A.2d 633 (N.J. 2004). In accordance with this longstanding polestar, a court should first inquire whether an immunity applies, and if not, whether liability should attach. Id. (quoting Weiss v. N.J. Transit, 608 A.2d 254, 258 (N.J. 1992)). When immunity and liability provisions are equally applicable, the court must grant tort immunity in favor of the public entity and employee defendant, see Fleuhr v. City of Cape May, 732 A.2d 1035, 1038-39 (N.J. 1999), because the NJTCA's immunity provisions trump its liability provisions, see Garry v. Payne, 541 A.2d 293, 297 (N.J. Super. Ct. App. Div. 1988).

Under the NJTCA, "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:2-10; see also Bernstein v. State, 986 A.2d 22, 31 (N.J. Super. Ct. App. Div. 2010); Hoag v. Brown, 935 A.2d 1218, 1230 (N.J. Super. Ct. App. Div. 2007).

Here, in Count Three of the Complaint, Plaintiff seeks to hold the City liable for the common law tort of malicious prosecution under the doctrine of respondeat superior. See ECF No. 1, ¶ 61. As the name of this tort implies, Plaintiff must prove that the City—through its employees—acted with malice when Plaintiff was criminally charged and arrested. See Lind v. Schmid, 337 A.2d 365, 368 (N.J. 1975) ("A malicious prosecution action arising out of a criminal prosecution requires proof: (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." (emphasis added)). Because

malice is a fundamental element of the tort of malicious prosecution, the City is statutorily immunized from suit under N.J. Stat. Ann. § 59:2-10.

## POINT IV

### PLAINTIFF'S MALICIOUS PROSECUTION CLAIM AGAINST SERGEANT BOULIERIS AND PATROLMAN GARCIA IN COUNT THREE OF THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The common law tort of malicious prosecution, "although ancient in origins, [is] treated with great caution because of [its] capacity to chill report to our courts by persons who believe that they have a criminal complaint . . . against another." LoBiondo v. Schwartz, 970 A.2d 1007, 1022 (N.J. 2009); see also Lind, 337 A.2d at 368 ("[M]alicious prosecution is not a favored cause of action because citizens should not be inhibited in instituting prosecution of those reasonably suspected of crime."). "Malicious prosecution provides a remedy for harm caused by the institution or continuation of a criminal action that is baseless." LoBiondo, 970 A.2d at 1022. To prevail on such a claim, a plaintiff must prove four core elements: (1) a criminal action was instituted by the defendant against the plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff. Id. Each element must be established; otherwise, the absence of any element is fatal to the successful prosecution of the claim. Id.; see also Earl v. Winne, 101 A.2d 535, 543 (N.J. 1953) ("The essence of an action for malicious prosecution is that the proceeding was instituted without probable cause, that the complainant was actuated by a malicious motive in making the charge."). Stated differently, the New Jersey Supreme Court has ruled that "the plaintiff must adduce affirmative proof, in addition to the proof of the termination of the proceeding in his favor, tending to show the falsity of or want of probable cause for the charge laid against him, or that the defendant did not honestly believe in his guilt." Earl, 101 A.2d at 543.

Here, Plaintiff's malicious prosecution claim against Sergeant Boulieris and Patrolman Garcia fails for two independent reasons: (1) Plaintiff's criminal prosecution was initiated with probable cause; and (2) Plaintiff has not pleaded any facts plausibly inferring malice. First, with respect to the probable cause determination, Defendants incorporate by reference the arguments already set forth in their qualified immunity analysis. See Point I.A., supra. Second, Plaintiff has failed to place Sergeant Boulieris and Patrolman Garcia on notice of any facts exhibiting that their alleged conduct was malicious. Indeed, beyond the mere inclusion of normative adverbs describing their alleged conduct, the Complaint is scant in its allegations against Sergeant Boulieris and Patrolman Garcia and instead fixates largely on Jose's conduct. See, e.g., ECF No. 1, ¶¶ 3-4, 9, 35-36. Threadbare recitals of a malicious prosecution cause of action will simply not suffice under Rule 12(b)(6). See Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1429-30)).

Therefore, Plaintiff's malicious prosecution claim against Sergeant Boulieris and Patrolman Garcia should be dismissed for failure to state a claim upon which relief can be granted.

## POINT V

## N.J. STAT. ANN. § 59:3-3 IMMUNIZES DEFENDANTS WITH RESPECT TO PLAINTIFF'S NEGLIGENCE CLAIM.

N.J. Stat. Ann. § 59:3-3 confers qualified immunity on law enforcement officers who "act[] in good faith in the execution or enforcement of any law." To pierce N.J. Stat. Ann. § 59:3-3 qualified immunity, Plaintiff must prove more than a public employee's ordinary negligence. Dunlea v. Twp. of Belleville, 793 A.2d 888, 891 (N.J. Super. Ct. App. Div. 2002).

Here, Count Four of the Complaint is couched as an ordinary negligence claim. Plaintiff alleges that Defendants "owed a duty of care" and "breached their duty," and "Defendants'

negligence was the proximate cause of [Plaintiff]'s wrongful conviction and caused him to suffer the injuries and damages described above." <u>See</u> ECF No. 1, ¶¶ 65-67. No one disputes that, at all times relevant hereto, Sergeant Boulieris and Patrolman Garcia were executing and enforcing New Jersey's criminal laws. <u>See generally</u> ECF No. 1. As <u>Dunlea</u> and a host of other cases instruct, ordinary negligence cannot escape the grasp of N.J. Stat. Ann. § 59:3-3 immunity. 793 A.2d at 891; <u>see also</u> <u>Alston v. City of Camden</u>, 773 A.2d 693, 703 (N.J. 2001) (same); <u>Canico v. Hurtado</u>, 676 A.2d 1083, 1085 (N.J. 1996) (same); <u>Lascurain v. City of Newark</u>, 793 A.2d 731, 752 (N.J. Super. Ct. App. Div. 2002) (same); <u>Liburdi v. Twp. of Toms River</u>, No. A-1362-11, 2012 WL 2360120, at *2 (N.J. Super. Ct. App. Div. June 22, 2012) (same). Thus, even assuming Sergeant Boulieris and Patrolman Garcia were negligent, liability cannot be imposed as a matter of law because the NJTCA's immunity provisions prevail over its liability provisions. And because Sergeant Boulieris and Patrolman Garcia enjoy qualified immunity, the City takes a share in that immunity for any negligent training and supervision. <u>See</u> N.J. Stat. Ann. § 59:2-2b ("A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.").

Therefore, Plaintiff's negligence claim should be dismissed in its entirety, with prejudice.

## <u>CONCLUSION</u>

For these reasons, Defendants respectfully request that the Court grant their motion and dismiss Plaintiff's Complaint, with prejudice.

Respectfully submitted,

**CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP**

By:     */s/ Michael T. Moran*
          Michael T. Moran, Esq.

Dated: February 28, 2024