**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**JOSE L. GARCIA,**

                    Plaintiff,

          -against-

**CITY OF PERTH AMBOY,**
**SERGEANT PANAGIOTI**
**BOULIERIS; PTL. ANTHONY**
**GARCIA;**

                    Defendants.

Case No.: 2:23-cv-22903-BRM-MAH

**BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS...........................................................................................i

TABLE OF AUTHORITIES ...............................................................................ii

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ....................................................................................2

    A.  Procedural History .......................................................................................2

    B.  Mr. Garcia's Arrest......................................................................................3

    C.  Mr. Garcia's Malicious Prosecution, Trial, and Sentencing ...........................4

    D.  Appeal and Exoneration ...............................................................................7

ARGUMENT ........................................................................................................8

    I.   LEGAL STANDARD UNDER RULE 12(b)(6). ...........................................8

    II.  IT HAS BEEN CLEARLY ESTABLISHED, FOR DECADES, THAT
          POLICE OFFICERS NEED TRUSTWORTHY INFORMATION TO
          OBTAIN PROBABLE CAUSE.................................................................10

    III. DUE PROCESS CLAIMS AND MALICIOUS PROSECUTION CLAIMS
          ARE NOT DUPLICATIVE. ....................................................................12

    IV. PLAINTIFF HAS ADEQUATELY PLED MALICE BY PLEADING
          LACK OF PROBABLE CAUSE................................................................14

    V.  THE NEGLIGENCE CLAIMS SHOULD NOT BE DISMISSED
          BECAUSE PLAINTIFF HAS AT LEAST SHOWN DEFENDANTS
          WERE RECKLESS..................................................................................15

    VI. PLAINTIFF SHOULD BE PERMITTED TO AMEND. ...........................16

CONCLUSION ...................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d. Cir. 2010) ...................................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................8, 9

*Beck v. State of Ohio*, 379 U.S. 89 (1964) ...............................................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................9

*Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249 (3d Cir. 2010) .........................13

*Black v. Montgomery Cnty.*, 835 F.3d 358 (3d Cir. 2016),
    as amended (Sept. 16, 2016) ...........................................................13

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ...............................................11

*Brunson v. Affinity Fed. Credit Union*, 199 N.J. 381 (N.J 2009) ............................14

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) ....................................13

*Dunlea v. Twp. of Belleville*, 349 N.J. Super. 506 (App. Div. 2002) ......................16

*Estate of Roman v. City of Newark*, 914 F.3d 789 (3d Cir. 2019) ............................8

*Fielder v. Stonack*, 141 N.J. 101 (N.J. 1995) ............................................15

*Fowler* ...............................................................................10

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d. Cir. 2009) .................................8

*Garlanger v. Verbeke*, 223 F. Supp. 2d 596 (D.N.J. 2002) ....................................15

*Guzman v. City of Newark*, No. 20-CV-6276 (EP) (JSA), 2023 WL 6876006
    (D.N.J. Oct. 18, 2023) .................................................................12

*Hayes v. Mercer County*, 217 N.J.Super. 614 (App. Div.),
    *certif. denied*, 108 N.J. 643 (N.J. 1987) ..............................................15

*Hedges v. U.S.*, 404 F.3d 744 (3d Cir. 2005) ............................................9

*Hope v. Pelzer,* 536 U.S. 730 (2002) ...................................................10

*Johnson v. City of Paterson*, No 21-cv-19907 (EP)(JSA)
(D.N.J. Nov 1. 2022) ...........................................................................8

*Kane v. Barger*, 902 F.3d 185 (3d Cir. 2018)........................................11

Kost v. Kozakiewicz, 1 F.3d 176 (3d Cir. 1993) .....................................8

*Kuzian v. Electrolux Home Prod., Inc.*, 937 F. Supp. 2d 599 (D.N.J. 2013) ..........14

*Lippay v. Christos*, 996 F.2d 1490 (3d Cir. 1993)....................................15

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015) ............................................................16

*McLaughlin v. Rova Farms, Inc.*, 56 N.J. 288 (N.J. 1970)......................16

*Philips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008).................10

*Scheing v. Fountain*, 729 F. App'x 175 (3d Cir. 2018)............................12

*Taylor v. Riojas*, 592 U.S. 7 (2020) ......................................................11

*Tofano v. Reidel*, 61 F. Supp. 2d 289 (D.N.J. 1999)...............................16

*Toto v. Ensuar*, 196 N.J. 134, 146, 952 A.2d 463 (N.J. 2008) ................15

*U. S. ex rel. Moore v. Koelzer*, 457 F.2d 892 (3d Cir. 1972)...................13

*United States v. Myers*, 308 F.3d 251 (3d Cir. 2002) .............................11

Victaulic Co. v. Tieman, 499 F.3d 227 (3d Cir. 2007)..............................8

*Zimmerman v. Corbett*, 873 F.3d 414 (3d Cir. 2017) .............................11

**Statutes**

42 U.S.C. § 1983 .............................................................................. 8, 12

N.J.S.A. 2C:12-1(a)(3)...........................................................................2

N.J.S.A. 2C:12-1(b)(4)...........................................................................2

N.J.S.A. 2C:12-3(a).................................................................................2

N.J.S.A. 2C:24-4(a).................................................................................2

iii

N.J.S.A. 2C:39-4(a)............................................................................................2

N.J.S.A. 59:2-10................................................................................................2

N.J.S.A. 59:3–3 ...............................................................................................15

## PRELIMINARY STATEMENT

Plaintiff Jose Garcia was wrongfully convicted of multiple crimes based on a farfetched story by his son, a compulsive liar, in his teens, who was retaliating against his father for imposing normal household rules. No reasonable officer could have ever believed this story. But Defendants Panagioti Boulieris and Anthony Garcia (no relation to Plaintiff) accepted it uncritically, filed police paperwork, and set in motion a prosecution that would take Plaintiff away from his family for years, until an appeals court overturned the charges.

Now, Defendants seek to dismiss his civil suit claiming they had no duty to do basic police work, and other technical arguments. These arguments have no merit here. *First*, the prosecution was initiated without any trustworthy evidence of wrongdoing, so there is no probable cause. And there is no qualified immunity, because it has been clear for decades that police officers, obviously, can only initiate a prosecution based on trustworthy evidence. Second, the due process claims are not duplicative, because due process violations are cognizable even if there was probable cause. So the Defendants are wrong to invoke the "more-specific provision" rule. Third, malice is adequately pled because there was no probable cause. The higher standard Defendants rely on is limited to summary judgment motions, not motions to dismiss. And fourth, there is no immunity for the negligence claims because, at a minimum, Plaintiff has shown recklessness. The

1

motion should be denied, and to the extent the Court does find the Complaint lacking, Plaintiff should be given leave to replead.[1]

## STATEMENT OF FACTS

### A. Procedural History

On March 3, 2017, Plaintiff Garcia was wrongfully convicted of second-degree possession of a weapon for an unlawful purpose (N.J.S.A. 2C:39-4(a)), second-degree endangering the welfare of a child (N.J.S.A. 2C:24-4(a)), third-degree terroristic threats (N.J.S.A. 2C:12-3(a)), fourth-degree aggravated assault (N.J.S.A. 2C:12-1(b)(4)), and simple assault, a disorderly persons offense (N.J.S.A. 2C:12-1(a)(3)). The judgment of conviction was rendered after a jury trial under indictment number 14-09-01098I in the Law Division (Criminal) of the Superior Court of New Jersey, Middlesex County. On December 11, 2017, Plaintiff was sentenced to an aggregate term of five years' imprisonment with a three-and-one-half year period of parole ineligibility.

On July 30, 2021, the Appellate Division of the Superior Court of New Jersey reversed the judgment of conviction and remanded the case for a new trial.

On or about December 6, 2021, the Law Division (Criminal) of the Superior Court of New Jersey, Middlesex County granted the Middlesex County

---

[1] Plaintiff does, however, concede that Point II, immunity under N.J. Stat. Ann. § 59:2-10, has merit, and will not be opposing that specific argument.

Prosecutor's Office's motion for dismissal of the indictment and the criminal proceeding terminated in his favor.

B. <u>Mr. Garcia's Arrest</u>

On the morning of June 7, 2014, Mr. Garcia was at home with his wife, Diana, and his two sons, Jose[2] and Aiden. Jose came downstairs and Mr. Garcia and his wife invited him to have a seat so they could discuss a letter they had received from Jose's school regarding his bad behavior. Jose, who was fifteen years old, had only been living with them since December 2013, when he had asked to move in with his father. He and his mother, Marilyn Sanchez, were constantly arguing, as Jose was always lying and doing poorly in school, and Ms. Sanchez was having trouble disciplining him.

Once Jose took a seat, Mr. Garcia proceeded to reprimand him about the contents of the letter and told Jose he would be spending his summer weekdays in a program called "Adelante" and working part-time on the weekends. Mr. Garcia wanted to help his son get on the right track and believed that keeping him busy during the summer and giving him structure would do that. Jose, however, who immediately objected to his father, had other plans.

---

[2] As Plaintiff Jose L. Garcia and his son, Jose C. Garcia, share the same name, this Opposition will refer to Plaintiff's son as "Jose."

In the early morning on June 8, 2014, nearly twenty-four hours later, the Perth Amboy Police Department knocked on Mr. Garcia's door and indicated that there was a warrant for his arrest. Mr. Garcia, who had never been in trouble with the law, was in shock. He consented to their search of his home and was immediately arrested. Mr. Garcia soon learned that Jose had told the police that he had threatened the entire family with a gun. Mr. Garcia, who was employed by FJC Security Services as an armed security guard at various federal facilities, was licensed to carry firearms and had several secured in his home, and he had never threatened anyone with any of them. No reasonable police officer would have ever believed Jose's outlandish accusations. Jose had a pattern of misconduct at school and was blatantly making false accusations that would allow him to move back in with his mother, who essentially let him do whatever he wanted.

Furthermore, there was no history of any domestic abuse in the family. Jose was not a reliable witness, and this fact was obvious to his own mother, who referred to her own son as a compulsive liar. The Individual Defendants should never have uncritically relied on his statements, as a basis for arrest or prosecution.

C. Mr. Garcia's Malicious Prosecution, Trial, and Sentencing

On February 28, 2017, the trial against Mr. Garcia commenced before Superior Court Judge Joseph L. Rea. Jose was the first witness to testify on behalf of the State. He basically relayed the same story he had told the police almost three

4

years earlier, namely, that on the morning of June 7, 2014, he was awakened by a domestic dispute between his father, Mr. Garcia, and his stepmother, Diane. At some point that morning, Jose claims he heard Diana calling his name in a "worried voice" and that when he went downstairs in response, he saw his father with one hand balled into a first and the other grabbing one of Diana's wrists.

Jose further testified that at this point, he got in between them and attempted to restrain his father. Mr. Garcia then allegedly went upstairs and into his bedroom closet to get his .38 caliber revolver, with Jose following. Jose testified that he follows his father back downstairs but sits on the steps while his father goes back to Diana and hears her say "get the gun out of my face." Mr. Garcia then allegedly comes back by the stairs where Jose is sitting and points the gun at him. Afterwards, Jose's aunt came to pick him up and he went to his little brother Aiden's birthday party. After the party, he goes home with Mr. Garcia, Diana, and Aiden. It is not until approximately 2:00 a.m. the next morning that he goes to PAPD with his mother to make a statement about his father's threats.

Jose admits that in 2014 he was a "rebellious teenager;" and his mother told Mr. Garcia their son was a compulsive liar. When his mother Ms. Sanchez testified on behalf of the State, she admitted that she did not believe a word that came out of her son's mouth during this time. Discounting Jose's claims at the time, she did not call 911 when her son called her to report that Mr. Garcia had pointed a gun at him.

5

Sergeant Panagioti Boulieris also testified on behalf of the State. He testified that in the early morning hours of June 8, 2014, Jose and his mother, Ms. Sanchez, came by the station to make a statement. Sergeant Boulieris admitted to conducting an informal one-on-one interview with Jose before audio/video recording a formal interview. On cross-examination, Sergeant Boulieris admitted that from the beginning of the investigation, his focus was on retrieving a statement from Jose and that he did not interview anyone else regarding the allegations against Garcia. Furthermore, he did not investigate the inconsistencies in Jose's statement or look into Jose's reputation for making false statements. Sergeant Boulieris also did not question Ms. Sanchez about why 911 was called or why she let her son return to Garcia's home after having been purportedly threatened at gunpoint.

Ptl. Anthony Garcia was the final witness from PAPD to testify for the State. Ptl. Garcia was responsible for preparing the criminal complaints and went to Mr. Garcia's home on the morning of June 8, 2014 to arrest him and to conduct a search for the weapons. Ptl. Garcia admitted that had he found loaded weapons or had seen anyone in the home with injuries, he would have indicated as such in his report. Despite the clear evidence that Jose was an unreliable witness, his lies were the sole basis for the prosecution against Mr. Garcia.

Despite all this, Garcia was convicted of second-degree possession of a weapon for an unlawful purpose, second-degree endangering the welfare of a child,

third-degree terroristic threats, fourth-degree aggravated assault, and simple assault, a disorderly persons offense. He was sentenced to an aggregate term of five years' imprisonment with a three-and-one-half year period of parole ineligibility.

D. Appeal and Exoneration

After Garcia's December 22, 2017 judgment of conviction, his defense attorney filed an appeal, which was argued on January 25, 2021. On July 30, 2021, the Superior Court of New Jersey, Appellate Division, reversed the judgment of conviction and remanded the case for a new trial. The Appellate Division determined that trial court erred in admitting Jose's prior consistent statement to bolster his credibility, and that the admission of the prior statement constituted prejudicial error.

On or about December 6, 2021, the Law Division (Criminal) of the Superior Court of New Jersey, Middlesex County granted the Middlesex County Prosecutor's Office's motion for dismissal of the indictment and the criminal proceeding terminated in his favor. Over the four years since his son's initial false statement, Mr. Garcia was finally exonerated of a conviction for a crime he did not commit.

On or about December 5, 2023, Plaintiff filed this case against the City of Perth Amboy, Sergeant Boulieris, and Ptl. Garcia, alleging prosecution without

probable cause and due process violations under 42 U.S.C. § 1983, and malicious prosecution and negligence under common law, and violations of the New Jersey Civil Rights Act. On February 28, 2024, Defendants filed the instant motion to dismiss, which Plaintiff now opposes.

## ARGUMENT

## I.      LEGAL STANDARD UNDER RULE 12(b)(6).

In deciding a motion to dismiss pursuant to Rule 12(b)(6) courts must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d. Cir. 2009); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a party's factual allegations must be sufficient to "raise a right to relief above the speculative level…" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).

Although grounds for relief must exceed mere labels and conclusions, the purpose of a Rule 12(b)(6) motion is to test the sufficiency of the pleading, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993); *Johnson v. City of Paterson*, No 21-cv-19907 (EP)(JSA) (D.N.J. Nov 1. 2022) citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 803 (3d Cir. 2019) ("viewing the pleadings and properly associated documents in the

light most favorable to [plaintiff], there are claims plausible enough to withstand a motion to dismiss…the [district court] did not have to look beyond the amended complaint and supporting documents to glean these facts").  If adequately stated, a claim may be supported by showing any set of facts consistent with the allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). This "facial plausibility" requirement does not require heightened fact pleading. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 121 (2d. Cir. 2010) ("…the notion that Twombly imposed a heightened standard that requires a complaint to include specific evidence, factual allegations in addition to those required by Rule 8, and declarations from the persons who collected the evidence is belied by the Twombly opinion itself.") Where facts are facially plausible a court can draw a reasonable inference from the factual content in the complaint that defendant(s) are liable for alleged misconduct. *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 570.

Further, it is Defendants' burden to show that no claim has been presented. *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005). Under the *Twombly/Iqbal* standard, the Third Circuit instructs a two-part analysis. First, a claim's factual and legal elements should be separated such that a "district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Fowler*, 578 F.3d at 210-11 (citing *Iqbal* at 1950). Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show

that the plaintiff has a 'plausible claim for relief.'" *Fowler* at 211 (quoting *Iqbal* at 1950); see *Philips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating…a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."

## II.   IT HAS BEEN CLEARLY ESTABLISHED, FOR DECADES, THAT POLICE OFFICERS NEED TRUSTWORTHY INFORMATION TO OBTAIN PROBABLE CAUSE.

Defendants improperly reframe the relevant inquiry, casting this case as a failure to properly investigate. While it is true that the failure to investigate is a tragedy, and this shoddy police work contributed to Plaintiff's wrongful conviction, it is not the heart of the matter here. Put simply, Defendants should have never relied on Jose, because he was fundamentally unreliable. No reasonable police officer would have ever accepted his farfetched story.

In considering whether to grant qualified immunity, "the salient question ... is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." *Hope v. Pelzer,* 536 U.S. 730, 741 (2002). A right is clearly established if its scope is

"sufficiently clear that a reasonable official would understand that what he is doing violates that right." 536 U.S. 730, 739 (2002); *see also Taylor v. Riojas*, 592 U.S. 7, 8 (2020) (circumstances, even if not encountered by prior courts, may still be "obvious[ly]" unconstitutional). "[O]fficials can still be on notice that their conduct violates [clearly] established law even in novel factual circumstances." *Pelzer*, at 741. "Of course, in an obvious case, these standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (addressing Fourth Amendment violations). Courts, "do not require a case directly mirroring the facts at hand, so long as there are sufficiently analogous cases that should have placed a reasonable official on notice that his actions were unlawful." *Kane v. Barger*, 902 F.3d 185, 195 (3d Cir. 2018) (citation omitted; cleaned up).

It is well-established that probable cause requires "reasonably trustworthy information." *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) (citing *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)); *see also United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (reversing because the officers did not have reasonably trustworthy information to establish probable cause). Further, it is impossible to imagine a different rule applying – because no reasonable officer would ever believe that probable cause could be established based on

11

untrustworthy information. In short, Jose was not trustworthy so the Defendants cannot rely on what he said to establish probable cause.

Similarly, the grand jury indictment procured with Jose's testimony is no defense. Any presumption created by a grand jury indictment is overcome where there is evidence the indictment was procured using "perjury." *Scheing v. Fountain*, 729 F. App'x 175, 180 (3d Cir. 2018); *Guzman v. City of Newark*, No. 20-CV-6276 (EP) (JSA), 2023 WL 6876006, at *4 (D.N.J. Oct. 18, 2023) (explaining that a grand jury indictment does not establish probable cause where "there specific instances of witnesses perjuring themselves"). Here, it is apparent from the allegations in the Complaint that Jose lied, repeatedly. His perjured testimony provides no protection to the Defendants.

The prosecution of Plaintiff was based on untrustworthy evidence, indeed outright lies. At a minimum, Plaintiff has adequately alleged the elements of malicious prosecution, under both state and federal law (42 U.S.C. § 1983). These claims should advance into discovery.

## III.   DUE PROCESS CLAIMS AND MALICIOUS PROSECUTION CLAIMS ARE NOT DUPLICATIVE.

The "more-specific provision" is inapplicable here, and even if it was not, any such motion is premature. This rule, simply stated, holds that substantive due process claims should be dismissed where there is a specific constitutional provision that covers the same claim. For example, in *Betts v. New Castle Youth*

*Dev. Ctr.*, the substantive due process claim was dismissed because the Eighth Amendment clearly covered the excessive force claim, making substantive due process superfluous. 621 F.3d 249, 261 (3d Cir. 2010). But this only applies when the alleged claims are exactly the same. *Id*. (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 833 (1998) "rejecting application of more-specific-provision rule to substantive due process claim arising from high speed police chase because facts were not within 'search and seizure' protections of Fourth Amendment").

There is no duplication here because due process claims can go forward even where there is probable cause. In *Black v. Montgomery Cnty.*, the plaintiff was falsely charged with arson based on fabricated evidence, exposed the fabrications at trial, and was acquitted. 835 F.3d 358, 363 (3d Cir. 2016), as amended (Sept. 16, 2016). There was probable cause, based on an initial report that the fire was not caused by faulty wiring because the power to the socket where the fire started had been cut. *Id*. at 361-63. But that was no defense, the Third Circuit concluded, because the plaintiff had a "stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment," because there was "a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." *Id*. at 363; *see also U. S. ex rel. Moore v. Koelzer*, 457 F.2d 892, 894 (3d Cir. 1972) (allowing Fifth

13

Amendment claims for fabricated testimony to go forward even if there was no

Fourth Amendment claim).

Further, it is submitted, it would be premature to dismiss any claim as

duplicative here. It is well established that, when it is unclear at the pleading stage

which theory of the case is going to be successful, that a plaintiff may plead in the

alternative. *Kuzian v. Electrolux Home Prod., Inc.*, 937 F. Supp. 2d 599, 618

(D.N.J. 2013) (allowing unjust enrichment claims to go forward, in the alternative,

because it was not clear there was a valid contract). At a minimum, any question of

whether claims are duplicative should be addressed at the summary judgment

stage, not before there has been meaningful discovery.

## IV.  PLAINTIFF HAS ADEQUATELY PLED MALICE BY PLEADING LACK OF PROBABLE CAUSE.

Defendants seek to have Plaintiff's malicious prosecution case dismissed,

before any discovery, because, they claim, there is not enough evidence of malice

– *i.e.*, Defendants' state of mind. At the summary judgment stage, some courts

have required proof of more than lack of probable cause to raise a question of fact

as to malice. *See Brunson v. Affinity Fed. Credit Union*, 199 N.J. 381, 396 (N.J

2009) (requiring some extrinsic evidence of malice at the summary judgment

stage). But at the pleadings stage, " [W]hen considering the legal sufficiency of

Plaintiff's allegations of malicious prosecution on a 12(b)(6) motion to dismiss, the

element of malice may be inferred from allegations sufficiently establishing an

14

absence of probable cause." *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 608 n5

(D.N.J. 2002); *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993) ("Malice

may be inferred from the absence of probable cause.").

Plaintiff's malicious prosecution claims are sufficient at this stage, and any

question of additional evidence should wait until after discovery.

## V.    THE NEGLIGENCE CLAIMS SHOULD NOT BE DISMISSED BECAUSE PLAINTIFF HAS AT LEAST SHOWN DEFENDANTS WERE RECKLESS.

The Defendants have the burden of proving that they are entitled to the good

faith defense under N.J.S.A. 59:3–3. *See Toto v. Ensuar*, 196 N.J. 134, 146, 952

A.2d 463, 470 (N.J. 2008) (explaining that the employee has the burden of proving

good faith). A public employee can establish this defense by proving that their

conduct was either objectively reasonable, or subjectively reasonable. Subjective

reasonableness, however, requires a full presentation at trial, and a determination

of the employee's state of mind by the finder fact; subjective reasonableness

cannot be determined on papers alone, particularly before discovery. *See Fielder v.*

*Stonack*, 141 N.J. 101, 132 (N.J. 1995) (quoting *Hayes v. Mercer County*, 217

N.J.Super. 614, 622 (App. Div.), *certif. denied*, 108 N.J. 643, 532 A.2d 226 (N.J.

1987)).

Further, in cases involving civil rights violations, the test for objective good

faith under New Jersey law is effectively the same as the test for qualified

15

immunity. *See Tofano v. Reidel*, 61 F. Supp. 2d 289, 307 (D.N.J. 1999). And there is no good faith defense where the defendant's conduct is reckless: "Reckless conduct is an extreme departure from ordinary care, in a situation in which a high degree of danger is apparent." *Dunlea v. Twp. of Belleville*, 349 N.J. Super. 506, 513 (App. Div. 2002); *see also McLaughlin v. Rova Farms, Inc.*, 56 N.J. 288, 310 (N.J. 1970) (finding that creating a dangerous hazard, and failing to warn of the hazard, was enough to prove recklessness and deny immunity).

Consequently, Defendants can be held liable if their conduct was reckless. Plaintiff was wrongfully convicted of a serious crime based on a wholly unreliable witness and perjured testimony. At the pleading stage this shows recklessness. Indeed, Defendants have argued that it demonstrates even more culpability, intentional conduct, so it would be contradictory to find that Plaintiff cannot meet the lessor standard.

## VI.   PLAINTIFF SHOULD BE PERMITTED TO AMEND.

In the event that the Court finds any deficiencies in the Complaint, Plaintiff should be given leave to amend. Given the complexities of the constitutional law at issue, Plaintiff should have the benefit of the Court's ruling before having to craft an amended complaint. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015) (explaining that, in complex cases,

"pleading defects may not only be latent, and easily missed or misperceived without full briefing and judicial resolution").

## CONCLUSION

For the reasons stated above, the motion to dismiss should be denied entirely, or in the alternative, Plaintiff should be permitted to amend the Complaint.

Dated: New York, New York
      April 22, 2024

GLENN A. GARBER, P.C.

By:    /s/ Glenn A. Garber

    Glenn A. Garber

The Woolworth Building
233 Broadway Suite 2370
New York, New York 10279
Phone: (212) 965-9370

RICKNER PLLC

By:    /s/ Rob Rickner

    Rob Rickner

14 Wall Street, Suite 1603
New York, New York 10005
Phone: (212) 300-6506

*Attorneys for Plaintiff Jose Garcia*

17