<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JOSE L. GARCIA,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF PERTH AMBOY, SERGEANT PANAGIOTI BOULIERIS, PTL. ANTHONY GARCIA,<br><br>                    Defendants. | Case No. 2:23-cv-22903 (BRM) (MAH)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendants City of Perth Amboy (the "City"), Sergeant Panagioti Boulieris ("Sgt. Boulieris"), PTL. Anthony Garcia's ("Ptl. Garcia") (together with Sgt. Boulieris the "Individual Defendants") (collectively, "Defendants") Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 10.) Plaintiff filed an Opposition (ECF No. 22), and Defendants filed a Reply (ECF No. 23). Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss is **GRANTED**.

I.      **Background**

        A.      **Factual Background**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document

integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This is a civil action seeking damages for Plaintiff's overturned state court criminal conviction. (ECF No. 1 ¶¶ 1–2.) Plaintiff submits he "was wrongfully prosecuted, indicted, tried, convicted, and imprisoned by the unlawful and illegal actions of [the Individual Defendants],[1] police officers within the Perth Amboy Police Department[,][2] responsible for the arrest and the initiation of criminal proceedings against [him]." (*Id.* ¶ 9; *see also id.* ¶ 3.)

Plaintiff alleges he was at home with his wife Diana Garcia ("Diana") and two sons Jose C. Garcia ("Jose") and Aidan Garcia ("Aidan") on June 7, 2014.[3] (*Id.* ¶ 23.) Plaintiff and Diana asked Jose to sit down and discuss a letter from Jose's school regarding his misbehavior. (*Id.*) Plaintiff reprimanded Jose over the letter from the school and told him that he would have to complete a weekday summer program and work part-time on weekends. (*Id.* ¶ 25.) Plaintiff believed that keeping Jose's schedule busy and structured would help him to get on the right path forward. (*Id.*)

However, Jose decided to tell the police that Plaintiff had threatened the family with a gun.[4]

---

[1] The Individual Defendants are sued in their individual capacities. (*Id.* ¶ 14.)

[2] Hereinafter the Perth Amboy Police Department will be referred to as the "PAPD."

[3] Jose, who was fifteen years old at the time, had been living with Plaintiff and his wife since Jose asked to move in with them in December 2013. (*Id.* ¶ 24.) Prior to moving in, Jose had been constantly arguing with his mother Marilyn Sanchez ("Ms. Sanchez"), due to poor performance in school and his persistent habit of lying. (*Id.*)

[4] Plaintiff alleges "[n]o reasonable police would have ever believed Jose's outlandish accusations. Jose had a pattern of misconduct at school and was blatantly making false accusations that would allow him to move back in with his mother, who essentially let him do whatever he wanted." (*Id.* ¶ 28.) Additionally, Plaintiff claims "Jose was not a reliable witness, and this fact was obvious to

(*Id.* ¶ 27.) The next morning on June 8, 2014, the PAPD appeared at Plaintiff's front door with a warrant for his arrest. (*Id.* ¶ 26.) Plaintiff consented to the search of his home and was arrested. (*Id.*) While Plaintiff acknowledges he had several firearms secured in the home, he submits that "he had never threatened anyone with any of them."[5] (*Id.* ¶ 27.) Plaintiff was employed as an armed security guard for various facilities and was licensed to carry firearms. (*Id.*)

On September 26, 2014, a Middlesex County Grand Jury indicted Plaintiff and charged him with:

> (1) three counts of fourth-degree aggravated assault with a firearm, in violation of N.J. Stat. Ann. § 2C:12-1b(4); (2) two counts of second-degree endangering the welfare of a child, in violation of N.J. Stat. Ann. § 2C:24-4a(2); (3) one count of third-degree terroristic threats, in violation of N.J. Stat. Ann. § 2C:12-3a; and (4) one count of second-degree possession of a weapon for an unlawful purpose, in violation of N.J. Stat. Ann. § 2C:39-4a.

(ECF No. 10-1 at 5–6 (citing Moran Decl., Ex. B, Am. J. of Conviction (ECF No. 10-2 at 15–18)).) Plaintiff's trial began on February 28, 2017, before the Honorable Joseph L. Rea, J.S.C. in

---

his own mother, who referred to her own son as a compulsive liar. The Individual Defendants should never have uncritically relied on his statements, as a basis for arrest or prosecution." (*Id.* ¶ 29.)

[5] In a July 30, 2021 opinion overturning Plaintiff's conviction, the Superior Court of New Jersey, Appellate Division (the "Appellate Division") detailed that the PAPD recovered three firearms from the home: two .38 caliber revolvers and one nine-millimeter handgun. (ECF No. 10-1 at 5 (citing *State v. J.L.G.*, Docket No. A-3631-17, 2021 WL 3234769, at *3 (N.J. Super. Ct. App. Div. July 30, 2021) (per curiam).) Pursuant to the Federal Rules of Evidence, a Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *see also United States v. Carr*, 25 F.3d 1194, 1203 (3d Cir. 1994). In "deciding a motion to dismiss, a district court is permitted to review matters of public record and take judicial notice of a prior judicial opinion." *Smith v Lynn*, 809 F. App'x 115, 117 (3d Cir. 2020) (citing *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009)). Taking notice of matters of public record does not convert a motion to dismiss into a motion for summary judgment so long as the facts are noticed in accordance with the Federal Rules of Evidence. *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

the Superior Court of New Jersey, Middlesex County, Law Division, Criminal Part (the "Trial Court"). (ECF No. 1 ¶ 30.)

Jose was the State's first witness, and provided an account similar to what he told police in 2014.[6] (*Id.* ¶ 31.) Jose testified that he awoke on June 7, 2014, due to a domestic dispute between Plaintiff and Diane. (*Id.*) Plaintiff summarizes the testimony as follows: "Jose claim[ed] he heard Diana calling his name in a 'worried voice' and that when he went downstairs in response, he saw his father with one hand balled into a fist and the other grabbing one of Diana's wrists." (*Id.*) Jose further testified he attempted to restrain Plaintiff, placing himself between Plaintiff and Diana. (*Id.* ¶ 32.) Jose stated he followed Plaintiff as Plaintiff allegedly went to retrieve a .38 caliber revolver from his bedroom, but he remained on the staircase when Plaintiff went back downstairs to Diana. (*Id.*) Jose testified that he heard Diana say "get the gun out of my face," and that Plaintiff allegedly came back to the staircase and pointed the revolver at him. (*Id.*) After these alleged events, Jose testified his aunt picked him up to attend Aidan's birthday party. (*Id.* ¶ 33.) Jose went to the police department with Ms. Sanchez at approximately 2:00 a.m. the next morning to make a statement regarding the alleged incident with his father. (*Id.*) Jose admitted that he was a "rebellious teenager" in 2014. (*Id.* ¶ 34.)

Ms. Sanchez testified on behalf of the State and according to Plaintiff acknowledged "she did not believe a word that came out of her son's mouth during this time." (*Id.*) Ms. Sanchez declined to call 911 after her son described the alleged incident. (*Id.*)

Sgt. Boulieris also testified on behalf of the State, and stated that he conducted an informal interview with Jose, in the early morning hours of June 8, 2014, prior to a formal interview. (*Id.* ¶

---

[6] The Complaint provides factual allegations that summarize the testimony presented at Plaintiff's trial. (*Id.* ¶¶ 31–37.)

35.) Sgt. Boulieris admitted he only interviewed Jose regarding the allegations against Plaintiff, and no one else. (*Id.*) Plaintiff alleges Sgt. Boulieris testified "he did not investigate the inconsistencies in Jose's statement or look into Jose's reputation for making false statements." (*Id.*) Further, Sgt. Boulieris "did not question Ms. Sanchez about why 911 was called or why she let her son return to [Plaintiff]'s home after having been purportedly threatened at gunpoint." (*Id.*)

Ptl. Garcia was the final witness from the PAPD to testify for the state. (*Id.* ¶ 36.) Ptl. Garcia was responsible for preparing the criminal complaints against Plaintiff. (*Id.*) Ptl. Garcia testified that he went to Plaintiff's home on the morning of June 8, 2014, to arrest him and conduct a search for the firearms. (*Id.*) Ptl. Garcia found the loaded weapons. (*Id.*)

In the July 30, 2021 opinion, the Appellate Division summarized Diana's testimony and noted that Diana denied both the allegations of domestic abuse and that anything had transpired on June 7, 2014.[7] (ECF No. 10 at 8 (citing *J.L.G.*, 2021 WL 3234769, at *3).) Diana stated Jose fabricated the incident to live with his mother and avoid working and attending the summer program. (*Id.*) Despite being presented with conflicting testimony from a New Jersey Division of Child Protection & Permanency ("DCPP") caseworker,[8] Diana testified that she was not a victim of domestic abuse. (*Id.*) Diana claimed the bruises came from "'an anemic condition' and a 'fall' in a parking lot." (*Id.*) Plaintiff likewise denied any allegations of domestic abuse, but contradictorily claimed that the "bruises were due to him being 'very rough with' Diana." (*Id.* (citing *J.L.G.*, 2021 WL 3234769, at *4).)

On March 3, 2017, a Middlesex County Jury returned a guilty verdict and Plaintiff was

---

[7] *See supra* n.5.

[8] The DCPP caseworker testified that she observed visible bruises on Diana's face and chest area during a visit to the family home on June 9, 2014. (*Id.*)

convicted of "second-degree possession of a weapon for an unlawful purpose (N.J.S.A. 2C:39-4(a)), second-degree endangering the welfare of a child (N.J.S.A. 2C:24-4(a)), third-degree terroristic threats (N.J.S.A. 2C:12-3(a)), fourth-degree aggravated assault (N.J.S.A. 2C:12-1(b)(4)), and simple assault, a disorderly persons offense (N.J.S.A. 2C:12-1(a)(3))." (ECF No. 1 ¶ 37.) Plaintiff was sentenced to a total of "five year's imprisonment with a three-and-one-half year period of parole ineligibility." (*Id.*) Plaintiff filed an appeal upon entry of his conviction in December 2017. (*Id.* ¶ 38.)

Thereafter, on July 30, 2021, the Appellate Division reversed the judgment of conviction and remanded the case for a new trial. (*Id.* ¶ 39.) The Appellate Division held the "[T]rial [C]ourt erred in admitting Jose's prior consistent statement to bolster his credibility, and that the admission of the prior statement constituted prejudicial error." (*Id.*) In early December 2021, the Trial Court granted the Middlesex County Prosecutor's Office's motion for dismissal of the indictment, and the criminal proceeding against Plaintiff was terminated. (*Id.* ¶ 40.) Plaintiff was imprisoned for over three years during the criminal proceedings. (*Id.* ¶¶ 2, 42.)

**B.    Procedural History**

On December 5, 2023, Plaintiff filed the Complaint.[9] (*Id.*) Plaintiff raises the following claims: Prosecution Without Probable Cause under 42 U.S.C. § 1983 Against the Individual Defendants (Count I); Due Process Violations under 42 U.S.C. § 1983 Against the Individual Defendants (Count II); Common Law Malicious Prosecution Against Defendants (Count III); Common Law Negligence Against Defendants (Count IV); Violations of the New Jersey Civil

---

[9] Plaintiff submits the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)–(4) as "[t]his action is brought pursuant to the 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth, and Fourteenth Amendment." (*Id.* ¶ 5.)

Rights Act (the "NJCRA") (Count V).[10] (*Id.* ¶¶ 45–70.) On February 28, 2024, Defendants filed the Motion to Dismiss and an Answer. (ECF Nos. 10, 11.) On April 23, 2024, Plaintiff filed an Opposition. (ECF No. 22.) On April 29, 2024, Defendants filed a Reply in further support of the Motion to Dismiss. (ECF No. 23.)

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the

---

[10] Plaintiff asserts vicarious liability against the City pursuant to the principle of *respondeat superior*. (*Id.* ¶¶ 4, 16.)

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pleaded; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *See id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant[.]" *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). After *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). The Supreme Court's ruling in *Iqbal* emphasizes that plaintiffs must show that the allegations of their complaints are plausible. *See id.* at 670.

### III.   DECISION

Defendants argue Counts I, II, and V of the Complaint should be dismissed because Sgt. Boulieris and Ptl. Garcia are entitled to qualified immunity. (ECF No. 10–1 at 15–24.) Alternatively, Defendants assert Plaintiff's § 1983 and NJCRA claims under the Fifth and Fourteenth Amendments should be dismissed as they are precluded by the "more-specific-provision rule." (*Id.* at 24–26.) Next, Defendants submit dismissal of Count III of the Complaint is warranted because: (i) N.J.S.A. § 59:2-10 immunizes the City; and (ii) Plaintiff fails to state claim against the Individual Defendants upon which relief can be granted. (*Id.* at 26–29.) As to Count IV, Defendants assert dismissal of Plaintiff's negligence claim is warranted because N.J.S.A. § 59:3-3 immunizes Defendants. (*Id.* at 29–30.)

In opposition, Plaintiff argues the Complaint should not be dismissed because: (i) the Individual Defendants improperly relied upon untrustworthy evidence;  (ii) the "more-specific-provision" rule is inapplicable as the due process and malicious prosecution claims are not duplicative; (iii) by pleading that there was a lack of probable cause, Plaintiff has adequately pled malice; and (iv) Plaintiff has properly alleged Defendants were reckless, and therefore, the negligence claims should not be dismissed. (ECF No. 22 at 10–16.)

To the extent necessary, the Court addresses the arguments below.

### A.      Qualified Immunity

Defendants argue the Individual Defendants are entitled to qualified immunity from Plaintiff's § 1983 claims.[11] (ECF No. 10-1 at 15–24.) Defendants assert qualified immunity applies

---

[11] Defendants assert dismissal of Count V of the Complaint is also warranted under the same grounds. (ECF No. 10-1 at 15–24.) The Court will not address Count V in this section because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See infra* Section III.B.

because: (i) probable cause existed as evidenced by the grand jury's indictment and witnesses' trial testimony; and (ii) Plaintiff did not have a constitutional right to an investigation in 2014 as to Jose's reliability. (*Id.* at 17–24.)

In opposition, Plaintiff briefly responds to Defendants' arguments and contends "[w]hile it is true that the failure to investigate is a tragedy, and this shoddy police work contributed to Plaintiff's wrongful conviction, it is not the heart of the matter here." (ECF No. 22 at 10.) Rather, Plaintiff submits "Defendants should have never relied on Jose because he was fundamentally unreliable. No reasonable police officer would have ever accepted his farfetched story." (ECF No. 22 at 10.) Plaintiff asserts "Jose was not trustworthy so the Defendants cannot rely on what he said to establish probable cause." (*Id.* at 12.) Further, Plaintiff argues the grand jury indictment should not be considered as evidence of probable cause because it was procured using Jose's perjurious testimony. (*Id.*)

In reply, Defendants counter that the Middlesex County Prosecutor's Office, a Middlesex County Grand Jury, Judge Rea, and a Middlesex County Jury found Jose's story was not "farfetched." (ECF No. 23 at 3 (quoting ECF No. 22 at 10).) Defendants note the Appellate Division "only reversed Plaintiff's conviction on evidentiary grounds." (*Id.*) Defendants submit Plaintiff's claims are predicated upon the contention that Jose, a non-government actor, committed perjury which does not properly a support a malicious prosecution claim under § 1983. (*Id.* at 4.) Defendants conclude by arguing "there is no binding case law or robust consensus of persuasive authority putting any reasonable law enforcement officer on notice that officers must thoroughly investigate a witness'[s] reliability and truthfulness in the community before lodging criminal charges." (*Id.* at 5 (citing ECF No. 1 ¶¶ 53, 63–64, 69–70).)

"The doctrine of qualified immunity protects government officials from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Montanez v. Thompson*, 603 F.3d 243, 249–50 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). It provides government officials with "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Qualified immunity will not, however, act as a shield for "the official who knows or should know he is acting outside the law." *Butz v. Economou*, 438 U.S. 478, 506–07 (1978).

A qualified immunity analysis depends on the "objective legal reasonableness" of the government official's action which must be "assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)). Specifically, to determine whether the Individual Defendants are entitled to qualified immunity, the Court must undertake a two-step inquiry:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at 232 (citations omitted). In other words, if the official's conduct violated a clearly established right, qualified immunity does not apply. *See id.* "[C]ourts are free to address

11

the two elements in whichever order they deem appropriate." *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (citing *Pearson*, 555 U.S. at 235).

A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11. "While this Court's case law do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and citation omitted). "Beyond debate" means the legal principle at issue is "settled law" and "is dictated by controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks and citations omitted). Qualified immunity "shields an officer from suit when [he or she] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he or she] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz,* 533 U.S. 194, 206 (2001) (stating that qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force'")). There is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White*, 580 U.S. at 79 (quoting *al–Kidd*, 563 U.S. at 742). Rather, "the clearly established law must be 'particularized' to the facts of the case." *Id.* (citing *Anderson,* 483 U.S. at 640). "Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (alterations in original) (citation omitted). The Third Circuit has noted that it "typically look[s] to Supreme Court precedent or a consensus in the Courts of Appeals" to determine if an official has "fair warning that his conduct would be unconstitutional" and that "the

contours of the right are sufficiently clear." *Kedra v. Schroeter*, 876 F.3d 424, 876 F.3d 424, 449–50 (3d Cir. 2017) (citations omitted).

Importantly, the Third Circuit has cautioned "that it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases," *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009). However, a complaint may be dismissed on a Rule 12(b)(6) motion based on qualified immunity "when the immunity is established on the face of the complaint," *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)). Consequently, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (alteration in original).

### 1.  Plaintiff Has Not Adequately Alleged a Statutory or Constitutional Right Was Clearly Established

Plaintiff alleges the Individual Defendants' actions in relying upon Jose's version of the events and failing to properly investigate resulted in a deprivation of Plaintiff's constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments; primarily, the right to be free from prosecution based on false statements[12] and unreasonable or unlawful searches and seizures. (ECF No. 1 ¶¶ 46, 48, 53–54.) Plaintiff characterizes the Individual Defendants' actions as "intentional and malicious." (*Id.* ¶ 3.)

Here, the Complaint does not allege that the Individual Defendants "acted in bad faith or with an improper motive." *Bowser v. Borough of Freehold*, 99 F. App'x 401, 404 (3d Cir. 2004).

---

[12] The parties do not extensively discuss this due process constitutional right, and instead primarily focus their arguments as to qualified immunity on the issue of probable cause in the context of an unreasonable or unlawful search and seizure.

Instead, Plaintiff intimates that the Individual Defendants should have conducted a more thorough investigation which would have established that Jose was an unreliable source of information. This theory of recovery with conclusory allegations as support (*see, e.g.*, ECF No. 1 ¶¶ 3, 28), does not sufficiently allege that the Individual Defendants violated clearly established constitutional rights. *See Mierzwa v. City of Garfield*, 170 F. App'x 212, 215 (3d Cir. 2005) (holding law enforcement defendants' "conduct in investigating the incident . . . did not violate clearly established constitutional rights of which a reasonable person would have known" (citation omitted)).

The absence of "controlling authority or a robust consensus of cases of persuasive authority" that establishes a constitutional right that would be "beyond debate" in similar facts as here guides the Court in its finding that Plaintiff has not adequately alleged a statutory or constitutional right that was clearly established. *Wesby*, 583 U.S. at 63. Notably, when addressing whether a plaintiff had properly pled a claim for "deliberately conducting an investigation that disregarded constitutional rights," the Eastern District of Pennsylvania has found that "numerous judges in [the Eastern District of Pennsylvania] have recognized that an inadequate police investigation does not independently violate any constitutional right." *Lewis v. City of Phila.*, Civ. A. No. 19-2847, 2020 WL 1683451, at *11 (E.D. Pa. Apr. 6, 2020) (collecting cases). There is nothing in the Complaint or case law cited by Plaintiff that would lead the Court to conclude that the Individual Defendants acting upon Jose's allegations violated a clearly established right, neither can the Court conclude the initiation of criminal proceedings under such circumstances and allegations violated a clearly established right.

Therefore, the Court finds Plaintiff has not alleged facts sufficient to show the violation of a clearly established constitutional or statutory right.

> **2.      Plaintiff Has Not Sufficiently Alleged a Violation of a Constitutional or Statutory Right**

After reviewing the Complaint and drawing all inferences in favor of Plaintiff, the Court also finds Plaintiff has failed to provide sufficient allegations to support the contention that the Individual Defendants lacked probable cause or provided false evidence and statements. According to Plaintiff, the Individual Defendants' alleged failure to properly investigate is part of the challenged actions, but predominantly, the Individual Defendants' challenged actions arise from their improper reliance upon Jose's version of events. (ECF No. 22 at 10–12.) A proper framing of Plaintiff's allegations has been aptly articulated by the Third Circuit: "[T]he issue is not whether the information on which [the Individual Defendants] base[d] their request for an arrest warrant resulted from a professionally executed investigation," but "rather, the issue is whether that information would warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

The Complaint presents an unfortunate narrative about a toxic family dynamic, but does not adequately allege the Individual Defendants violated Plaintiff's constitutional rights such that the Individual Defendants are not entitled to qualified immunity. The Individual Defendants' actions as pled do not rise to the level of unreasonable and unconstitutional actions where qualified immunity would not apply. *Cf. Ogrod v. City of Phila.*, 598 F. Supp. 3d 253, 264 (E.D. Pa. 2022) (holding defendant police officers were not entitled to qualified immunity where they allegedly fabricated plaintiff's murder confession); *Roberts v. Cnty. of Essex*, 648 F. Supp. 3d 519, 542 (D.N.J. 2022) (finding qualified immunity did not apply where there were allegations the police detective defendant fabricated evidence); *Kelley v. Reyes*, Civ A. No. 19-17911, 2020 WL 3567285, at *9 (D.N.J. July 1, 2020) (holding allegations that police officer defendants

"intentionally coerced confessions, fabricated evidence . . . , and hid material exculpatory and impeachment evidence foreclose[d] a finding of qualified immunity"). Instead, Plaintiff's allegations as to the Individual Defendants' actions represent an improper reliance upon an untrustworthy witness and an alleged failure to sufficiently investigate which does not divest the Individual Defendants of their qualified immunity. *See Wilson v. Russo*, 212 F.3d 781, 789 n.5 (3d Cir. 2000) (providing that a negligent investigation does not prevent a defendant's entitlement to qualified immunity).

Plaintiff claims that "[t]he Individual Defendants provided false evidence and statements to the prosecution, defense counsel, and court, including statements from an unreliable witness, [Jose], about the alleged assault and threat with a deadly weapon." (ECF No. 1 ¶ 53.) To adequately allege that the Individual Defendants reflected a false version of the events, Plaintiff must show "first, that the officer, with at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,' and second, that those assertions or omissions were 'material, or necessary, to the finding of probable cause.'" *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016) (quoting *Wilson*, 212 F.3d at 786–87).

Plaintiff does not satisfy the applicable burden as he relies upon conclusory allegations that do not provide enough specificity as to the alleged false evidence and statements underlying Plaintiff's criminal proceedings. Further, Plaintiff has not provided allegations as to the other evidence, if there was any, that was relied upon for the arrest and whether that evidence was deficient. *See Dempsey*, 834 F.3d at 470 ("Federal courts review the record to ensure that the proper procedure for determining probable cause was followed. If it was not, the court itself must engage that procedure and determine whether probable cause existed in spite of that failure. As we have described in prior cases, in conducting this analysis, the district court must identify any

16

improperly asserted or omitted facts and, if it determines there were reckless misrepresentations or omissions, 'excise the offending inaccuracies and insert the facts recklessly omitted' from the affidavit and assess whether the reconstructed affidavit would establish probable cause." (quoting *Wilson*, 212 F.3d at 789)). It is not proper for the Court to engage in "Monday morning quarterback[ing]" and question the Individual Defendants' actions related to Plaintiff's investigation following the Appellate Division's ruling that Judge Rea improperly admitted Jose's prior consistent statements. *Id.* at 469.[13]

Importantly, a grand jury indictment[14] like the one that occurred here, "constitutes prima facie evidence of probable cause to prosecute." *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989). Further, even if Individual Defendants had reason to question Jose's narrative, the Court recognizes probable cause does "not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands." *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975); *see also Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005) ("[T]he [probable cause] standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility were, in retrospect, accurate.").

---

[13] *See Michaels v. New Jersey*, 50 F. Supp. 2d 353, 363 (D.N.J. 1999), *aff'd*, 222 F.3d 118 (3d Cir. 2000) ("An improper investigation yielding unreliable evidence has its own remedy in the criminal justice system: suppression of the evidence at trial or reversal of a conviction based on the unreliable evidence. . . . Having failed to convince the trial judge that remedy was required . . . , [plaintiff] utilized the appellate process. Slow as that process may have seemed to her, it was the appropriate method by which to challenge those techniques and that evidence. (citations omitted)).

[14] To the extent Plaintiff claims "[t]he grand jury indictment is a nullity because it was procured using false statements and statements and by withholding exculpatory evidence and statements." (ECF No. 1 ¶ 47.) The Court finds these are conclusory allegations which "do not suffice" to defeat a motion to dismiss. *Iqbal*, 556 U.S. at 678. The Complaint is devoid of factual allegations establishing that the Individual Defendants engaged in this behavior.

Additionally, the fact that the State dismissed the charges following the Appellate Division's overturning of Plaintiff's conviction is of no consequence. *See Orsatti*, 71 F.3d at 482–83 ("Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." (citation omitted)); *Dempsey*, 834 F.3d at 467 ("Far from demanding proof of guilt beyond a reasonable doubt, '[p]robable cause exists if there is a 'fair probability' that the person committed the crime at issue.'" (quoting *Wilson*, 212 F.3d at 789 (alteration in original)).

Accordingly, based on the foregoing, the Court finds Plaintiff has not sufficiently alleged the Individual Defendants violated his constitutional rights. Defendants' Motion to Dismiss Counts I and II is **GRANTED**.[15]

### B.   The Court Declines Supplemental Jurisdiction Over Plaintiff's Remaining Claims

Having "dismissed all claims over which [this Court] has original jurisdiction" with respect to Defendants, 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the remaining state law claims that Plaintiff asserts against Defendants. *See supra* Section I.B at 6 n.8; *Elkadrawy v. Vanguard Grp.*, 584 F.3d 169, 174 (3d Cir. 2009). Therefore, Plaintiff's remaining state law claims—Common Law Malicious Prosecution Against Defendants (Count III), Common Law Negligence Against Defendants (Count IV), and Violations of the NJCRA (Count V)—are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

---

[15] The Court notes Plaintiff does not cite to case law wherein police officers acting in a similar fashion have been found to have violated constitutional rights sufficient to place them outside the ambit of qualified immunity. *See White*, 580 U.S. at 79; *see also Brown v. Elliott*, 876 F.3d 637, 643 (4th Cir. 2017) ("[Plaintiff] does not cite, nor have we found, a single case that so holds.").

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 10) is **GRANTED**. The Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**.[16] Plaintiff may, within thirty (30) days of the date of this Opinion, file a first amended complaint curing the deficiencies addressed herein. Defendants may respond to the first amended complaint, if filed, as appropriate and consistent with applicable federal and local rules. An appropriate Order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  September 4, 2024

---

[16] Plaintiff requests leave to amend the Complaint. (ECF No. 22 at 16–17.) Defendant asserts Plaintiff's request should be denied because amendment would be futile as "[n]o additional facts will change the inescapable outcome [that] there was probable cause to charge Plaintiff." (ECF No. 23 at 7–8.) Federal Rule of Civil Procedure 15(a) governs requests for leave to amend, allowing a party to amend its pleadings after obtaining the Court's leave or the written consent of its adversary. Under this liberal rule, the Court must "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This lenient standard ensures that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990) (citation omitted); *see also Sabatino v. Union Twp.*, Civ. A. No. 11-1656, 2013 WL 1622306, at *6 (D.N.J. Apr. 15, 2013) (discussing that "if the underlying facts relied upon by a party might be a proper subject of relief, that party should have the opportunity to tests its claims on the merits" (citation omitted)). Given that this is the first motion to dismiss the Court has addressed, and as Plaintiff states this case involves "the complexities of the constitutional law at issue," (ECF No. 22 at 16), the Court will grant Plaintiff's request for leave to amend. *Habayeb v. Butler*, Civ. A. No. 15-5107, 2016 WL 1242763, at *8 (D.N.J. Mar. 29, 2016) (granting plaintiff leave to amend complaint on counts dismissed without prejudice without separate motion to amend under Fed. R. Civ. P. 15(a)(2)).